**UNITED STATES of America,**

v.

**William M. FURMAN.**

No. CR. A. 90–427.

United States District Court,
E.D. Louisiana.

April 13, 2001.

William Michael Furman, Odessa, TX, pro se.

Harry William McSherry, Mary Jude Darrow, U.S. Attorney's Office, New Orleans, LA, for U.S.

### ORDER AND REASONS

CLEMENT, Chief Judge.

Before the Court are several *pro se* submissions from William Micheal Furman. The submissions are:

(1) NOTICE OF TRESPASS ON PRIVATE PROPERTY AND TITLE TO PRIVATE PROPERTY, DEMAND FOR JUDICIAL NOTICE, DEMAND TO DISMISS ALL CRIMINAL AND/OR COMMERCIAL CHARGES AND DISCHARGE ALL ACCOUNTS, NOTICE OF WAIVER OF TORTS AND DEMAND FOR PAYMENT OF CAPTAIN'S PAY AT $300 PER DAY FROM OCTOBER 3, 1991 TO PRESENT BY SWORN AFFIDAVIT OF William Micheal Furman.

(2) PETITION FOR ABATEMENT AND OTHER RELIEF BY SWORN AFFIDAVIT OF William Micheal Furman, a living, breathing man, and Sovereign under God.

(3) REQUEST TO CLERK FOR ENTRY OF DEFAULT

(4) *MOTION TO COMPEL UNDER TITLE 28 USC § 1361*

(5) Verified Declaration in the Nature of an Affidavit for Truth in Commerce and Contract for Waiver of Tort

Mr. Furman requests several forms of relief, all of which are DENIED for the following reasons.

### A. BACKGROUND

Mr. Furman was charged in a two-count indictment with conspiracy to violate laws of the United States, including the bank fraud and money laundering statutes (Count 1), and attempted bank fraud (Count 2). A jury convicted him on both counts. On January 6, 1993, the judge to whom this case originally was assigned sentenced Mr. Furman to 60 months imprisonment as to Count 1, 78 months as to Count 2, and three years of supervised release. The Fifth Circuit affirmed Mr. Furman's conviction and sentence on December 22, 1993, *see United States v. Furman*, 12 F.3d 1099 (5th Cir.1993) (table), and the Supreme Court denied certiorari on April 25, 1994. *See Furman v. United States*, 511 U.S. 1059, 114 S.Ct. 1628, 128 L.Ed.2d 352 (1994).

Mr. Furman has been no stranger to this Court since the case was reassigned to it in 1993. On December 26, 1995, Mr. Furman filed a motion for a new trial or to alter his sentence, which this Court denied on February 16, 1996. The Fifth Circuit dismissed Mr. Furman's appeal of this order for want of prosecution on October 24, 1996, and nearly a year to the day later, on October 23, 1997, Mr. Furman filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. The Court denied this motion on February 26, 1998. About the same time he filed his § 2255 motion in this Court, Mr. Furman also filed an action in the United States District Court for the District of Columbia. The judge in D.C. construed Mr. Furman's action as a § 2255 motion and transferred it to this Court, which ultimately dismissed it on September 4, 1998 for failure to prosecute. Ten days later, Mr. Furman filed an "Ex Parte Motion for Discovery of the Character of the United States Court," apparently in an effort to challenge this Court's jurisdiction to decide his post-conviction motion. The Court assured Mr. Furman that his § 2255 claim had been heard by an Article III

court properly established by Congress and denied the motion on September 16, 1998. On April 15, 1999, the Fifth Circuit refused to issue Mr. Furman a certificate of appealability.

Which leads us to Mr. Furman's present slate of submissions.[1]

### B. *LAW AND ANALYSIS*

In his first motion, which the Court shall refer to as the "Notice of Trespass," Mr. Furman demands five forms of relief. The Court agrees with the Government's translation of these demands. Mr. Furman asks this Court to:

(1) Discharge all liens filed by the United States against his property;

(2) Expunge the records of this proceeding;

(3) Award him military back pay at the rate of $300 per day from October 4, 1991, to the date of the court's order on this motion, plus interest, military credit for the period of his incarceration and supervised relief, and military retirement with total disability;

(4) Recognize Commonwealth Chartered Trust Company, Ltd. as a tax exempt entity; and

(5) Determine that his property is exempt from all taxes.

In the second motion, which the Court shall refer to as the "Petition for Abatement," Mr. Furman seems to argue that his conviction was based on a deficient superseding indictment. He also argues that the Government never answered the allegations contained in the "Notice of Trespass," and that he is therefore entitled to the relief requested therein.

The third motion, the "Request for Entry of Default," revisits this theme. Mr. Furman asserts that the Government failed to answer either of the first two motions and therefore asserts he is entitled to an entry of default.

In his fourth motion, the "Motion to Compel," Mr. Furman contends that the Clerk has failed to properly file his submissions and requests that the Court order her to do so.

Finally, Mr. Furman's "Verified Declaration in the Nature of an Affidavit for Truth in Commerce and Contract for Waiver of Tort" appears to be a proposed judgment in connection with his Request for Entry of Default.

The Court will address each of these contentions, but not necessarily in the above order.

### 1. *Whether the Government "Answered" Mr. Furman's Motions and the True Identity of the Parties Involved*

The Court ordered the Government to respond to Mr. Furman's Notice of Trespass by December 8, 2000. *See* Minute Entry (Nov. 17, 2000). The Government filed its opposition on December 6, 2000. Mr. Furman's claims that the Government failed to answer his motion are therefore meritless, and his requests for "Entry of Default" and entry of the "Verified Decla-

---

1. In addition to his conviction in the Eastern District of Louisiana, it appears that Mr. Furman was also convicted in the United States District Court for the District of New Mexico on similar charges. The judge in New Mexico sentenced him to a sixty month term of imprisonment to be served consecutively to the seventy-eight month term imposed in this Court. The Tenth Circuit affirmed the sentence and conviction on August 5, 1994, *see*

United States v. Furman, 31 F.3d 1034 (10th Cir.1994), and the Supreme Court denied certiorari on December 5, 1994. *See Furman v. United States,* 513 U.S. 1050, 115 S.Ct. 651, 130 L.Ed.2d 555 (1994). In affirming his conviction, the Tenth Circuit upheld the district court's finding that several of Mr. Furman's *pro se* trial motions were frivolous. *See* 31 F.3d at 1037.

ration in the Nature of an Affidavit for Truth in Commerce and Contract for Waiver of Tort" are DENIED.

■ Part of Mr. Furman's claim that the Government failed to answer his motion appears to be based on his contention that the "United States of America" is an improper, and perhaps fictitious, entity which could neither properly file criminal charges against him nor properly file a response to his motions. As support for this theory, Mr. Furman notes that the Government never produced documents proving the United States of America's "corporate existence" and observes that Article III section 1 of the Constitution refers to "The judicial power of the *United States,*" not the judicial power of the "United States *of America.*"

Similarly, Mr. Furman argues that he is not the person charged in the superseding indictment which underlies his current imprisonment. Mr. Furman writes: "The indictment is against a fictitious name 'WILLIAM MICHAEL FURMAN'." Mr. Furman's middle name is actually spelled "Micheal." Furthermore, his name is spelled with only the initial letters capitalized "as required by the Rules of English Grammar for writing of the names of natural persons." Petition for Abatement p. 2 ¶ 2. The misspelling of his middle name and the capitalization of every letter of his name, he argues, demonstrate that neither the indictment nor any other document filed by the Government refers to him.

The Court finds that neither of these alleged misspellings warrant a dismissal of the indictment. Federal Rule of Criminal Procedure 7(c)(1) provides that:

> The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal com-

mencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.

According to Professor Wright, the effect of Rule 7 was to "put an end to 'the rules of technical and formalized pleading which had characterized an earlier era.' " 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 123, at 529 (3d ed.1999) (quoting *Russell v. United States,* 369 U.S. 749, 762, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962)). "The precision and detail formerly demanded are no longer required, imperfections of form that are not prejudicial are disregarded, and common sense and reason prevail over technicalities." *Id.* at 530–31. Thus, the Fifth Circuit held long ago that a "name need not be correctly spelled in an indictment, if substantially the same sound is preserved." *Thibodeau v. United States,* 361 F.2d 443, 444 (5th Cir.1966) (per curiam) (rejecting defendant's contention that indictment was fatally defective because his surname was spelled "Thibobeau" instead of "Thibodeau").

■ Here, the difference between "Micheal" and "Michael" is a mere transposition of letters with presumably little (if any) auditory significance, and the difference between "WILLIAM MICHAEL FURMAN" and "William Michael Furman" is a mere change of case with absolutely no auditory significance. Neither

variation could have prejudiced Mr. Furman in any way other than to perhaps offend his aesthetic preferences. That he recognized himself to be the individual referenced in the superseding indictment is clear from the second page of the Notice of Trespass, where he refers to himself as "William Micheal Furman, ... who is known as William Michael Furman, who is also known as ... WILLIAM MICHAEL FURMAN." Similarly, there can be no question that Mr. Furman was aware of the true identity of his prosecutor, irrespective of whether it referred to itself as the "United States" or the "United States of America." Accordingly, the Court DENIES Mr. Furman's Petition for Abatement.

### 2. Whether the Clerk of Court Filed Mr. Furman's Submissions

In his Motion to Compel, Mr. Furman asks that the Court order the Clerk to properly file his submissions pursuant to 28 U.S.C. § 1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." As the instant Order and Reasons demonstrates, the Court has received from Mr. Furman the allegedly misfiled documents. Therefore, the Court must conclude either (1) the Clerk properly filed Mr. Furman's motions or (2) any error in the filing of his submissions was harmless. In either case, Mr. Furman requires no further relief, and his Motion to Compel is DENIED.

### 3. Whether Mr. Furman is Entitled to Any Relief Requested in the Notice of Trespass

The Court now addresses Mr. Furman's main motion, the Notice of Trespass.

### a. Discharge Liens

■ Mr. Furman has gone to great lengths to file several UCC-1 Financing Statements, which he argues give him priority security interests (and perhaps property interests) in various properties, and the first form of relief he demands is the "Release of all Title to all names on UCC-1 Financing Statements". Notice of Trespass p. 7. It appears that Mr. Furman may have filed these financing statements in reaction to several liens filed by the Government against the Commonwealth Chartered Trust Company, Ltd. ("Commonwealth").

■ The Government filed its liens against Commonwealth because the fine imposed in Mr. Furman's case has not been paid. As noted above, Mr. Furman's sentence was affirmed by the Fifth Circuit, and the fines have never been overturned. Thus, the Court concludes that the Government had proper justification for filing the liens. In contrast, despite having filed financing statements, Mr. Furman has submitted no proof that he has a legitimate security interest in any of the properties listed and no proof that he has any grounds for foreclosing on them. Contrary to Mr. Furman's contentions, the mere fact that no party has objected to his filing of the financing statements does not constitute an admission to the validity of the purported security interests or to Mr. Furman's right to take possession of the property. Thus, Mr. Furman has not demonstrated that the Court must—or even that it should—take judicial notice of his interests in the properties pursuant to Federal Rule of Evidence 201. And finally, the exhibits submitted by both parties establish that the Government's liens were filed first and therefore would be superior in rank to Mr. Furman's liens. Therefore, the Court DENIES Mr. Furman's Re-

quest to Release Title and/or to Discharge the Liens against Commonwealth.

### b. Recognize Tax Exempt Status

■ Mr. Furman requests that the Court recognize Commonwealth and the other properties in which he claims to have a security interest as tax exempt. The Government argues that Mr. Furman cannot represent any of these entities because he is no longer a licensed attorney.

The Court agrees. 28 U.S.C. § 1654, which governs appearances in federal court, provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." However, in *Southwest Express Co., Inc. v. Interstate Commerce Commission*, 670 F.2d 53 (5th Cir.1982), the Fifth Circuit held that § 1654 does not allow a non-lawyer to appear in court to represent another person, even if that "person" is a corporation or partnership with which he is affiliated. "Corporations and partnerships, by their very nature, are unable to represent themselves and the consistent interpretation of § 1654 is that the only proper representative of a corporation or a partnership is a licensed attorney, not an unlicensed layman regardless of how close his association with the partnership or corporation." *Id.* at 55–56. Therefore, the Court DENIES Mr. Furman's request that these entities be recognized as tax exempt.

### c. Award Military Back Pay

■ Mr. Furman appears to have been honorably discharged from the United States Army on February 12, 1968 after having achieved the rank of Captain in the Judge Advocate General's Corps. He also appears to believe that his imprisonment has been a form of involuntary conscription. He therefore "requests the Court to order the U.S. Army to give [him] credit for active duty service plus accrued leave and sick leave at $300 per day on Temporary Duty Assignment, plus interest at Treasury Bill rate from October 4, 1991 to date of payment for his conscription services to the United States of America and retire him as a Captain at full disability." Notice of Trespass p. 4. Excluding interest, Mr. Furman claims military back pay in excess of $1,000,000.

As the Government correctly notes, Mr. Furman's claim is beyond this Court's jurisdiction. 28 U.S.C. § 1346(a)(2) provides that

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of ... [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department.

The Court of Federal Claims has exclusive jurisdiction over claims for back pay in excess of $10,000. *See id.; Shaw v. Gwatney,* 795 F.2d 1351, 1356 (8th Cir.1986) (district court had no jurisdiction over claim for back pay in excess of $10,000 because claim was within exclusive jurisdiction of Claims Court). Therefore the Court DENIES Mr. Furman's back pay claim for lack of jurisdiction.

### d. Expunge the Records of This Proceeding

■ Finally, Mr. Furman asks the Court to "[a]bate and remove all records of this proceeding and any matters in any way pertaining to it". Notice of Trespass p. 7. District courts have discretion to expunge judicial records through their supervisory powers. *Sealed Appellant v. Sealed Appellee,* 130 F.3d 695, 697 (5th Cir.1997), *cert. denied,* 523 U.S. 1077, 118 S.Ct. 1523, 140 L.Ed.2d 675 (1998). District courts

616

may also expunge executive branch records but only in the "exceedingly narrow" circumstances where the party claiming expungement shows "an affirmative rights violation by executive branch officers or agencies to justify the intrusion into the executive's affairs" and where the injury is "such that no other remedy would afford relief." *Id.* at 697 & 700, n. 12. A mere showing of burden is insufficient.

Mr. Furman has shown no reason for the Court to expunge its own or any other entity's records regarding his conviction. As noted above, the Fifth Circuit affirmed his conviction and his sentence, and Mr. Furman has demonstrated no affirmative rights violation. Therefore the Court DENIES Mr. Furman's request to expunge the record.

## C. *CONCLUSION*

For the reasons set forth above,

IT IS ORDERED that Mr. Furman's motions and requests for relief are DENIED.