**UNITED STATES, Appellee,**

v.

**Michael P. FOSHER, Defendant–Appellant.**

No. 96–1473.

United States Court of Appeals,
First Circuit.

Heard May 7, 1997.

Decided Aug. 27, 1997.

George F. Gormley by appointment of the court, with whom John D. Colucci and Gormley & Colucci, P.C., Cambridge, MA, were on brief, for appellant.

Alexandra Leake, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, Boston, MA, was on brief, for appellee.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

On July 6, 1995, Defendant–Appellant Michael P. Fosher ("Fosher") pled guilty to four counts of an indictment, which charged him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), racketeering, in violation of 18 U.S.C. § 1962(c), interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, and conspiracy, in violation of 18 U.S.C. § 371. On March 5, 1996, the sentencing court imposed upward adjustments for an unusually vulnerable victim and for Fosher's role in the offense. The court further determined that Fosher's armed bank robbery conviction under the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* ("FYCA"), previously set aside pursuant to that Act, was properly included in the Criminal History Category calculation. The district court calculated Fosher's Total Offense Level at 33 and his Criminal History Category at III, resulting in a guideline sentencing range of 168 to 210 months. The government requested that, in light of Fosher's substantial assistance, the court grant a downward departure under § 5K1.1 and impose a 60 month sentence. The court granted the government's downward departure motion, and sentenced Fosher to 78 months' imprisonment. Fosher appeals his sentence, arguing that the district court erred in its rulings regarding the unusually vulnerable victim and the role in the offense adjustments, as well as its inclusion in Fosher's Criminal History Category of his set-aside conviction under the FYCA. For the reasons set forth herein, we reverse and remand in part and affirm in part.

## BACKGROUND

In presenting the facts, we consult the uncontested portions of the Presentence Report ("PSR"), as well as the sentencing hearing transcript. *United States v. Lagasse,* 87 F.3d 18, 20 (1st Cir.1996).

In December 1991, Fosher called Michael Chinn ("Chinn") from Florida and told Chinn

that he would pay Chinn's airfare to Florida so that they could do "something big." Chinn flew to Fort Lauderdale with Anthony Corso ("Corso"). The airline tickets for both were purchased by Fosher. Chinn stayed with Fosher, while Corso stayed with his father, Philip Corso. Upon arrival in Fort Lauderdale, Chinn and Corso were taken by a friend of Philip Corso to a restaurant to meet Fosher and Joe Bomengo ("Bomengo"). During lunch, Fosher told them about a house he had targeted for a home invasion. Donald Marks Schoff ("Schoff") had told Fosher that the house contained $500,000 in gold coins and a five carat diamond ring and was occupied by a 62 year old woman, her daughter and granddaughter. Fosher stated that he wanted Chinn and Corso to enter the house, while he waited outside in a van and Schoff waited at the end of the street listening to a police scanner. They also discussed using weapons and Fosher unsuccessfully sought weapons from an acquaintance he ran into in the restaurant.

Thereafter, Fosher, Chinn, Corso, Bomengo, and Schoff met Philip Corso at Corso's house. Schoff described where the money was kept. The participants looked at some guns at Philip Corso's house and wanted to borrow the guns. Philip Corso declined to let the group use the guns because the guns "were hardly needed since the victim was an older woman." At the meeting, Bomengo suggested that the participants pose as florist delivery men. Fosher determined that he would rent a white minivan to resemble a florist delivery truck. During the discussion, Fosher made decisions and assigned roles to the participants.

On the morning of January 8, 1992, Fosher, Chinn, Corso, and Schoff executed the home invasion. Fosher, Chinn, and Corso drove to the victim's house in the van, while Schoff followed in a second car. On the way to the victim's house, they purchased a floral arrangement and gloves and "ties" to bind the victims. Corso and Chinn went to the front door with the flowers. When the victim came to the door, they entered. Corso asked her for the keys to the floor safe in the garage and attempted to open it. Fosher

and Schoff entered the garage to help him. Upon opening the safe, they discovered only $500,000 worth of gold coins. They approached the victim and asked her where the other safe and the five carat diamond ring were. The men took the victim to her jewelry lockbox and took jewelry valued at $23,000. When they were unable to find a five carat diamond, Fosher told Chinn, within the hearing of the victim, "if she doesn't tell you where the other safe is, shoot her." Chinn told the victim that he would not let them hurt her.

When they left the victim's house, the four went to Fosher's condominium, where they divided the coins. Fosher made Corso throw away the jewelry for fear that it might allow someone to identify them. Corso left Florida soon thereafter, taking $80,000 in coins with him to Massachusetts. Chinn also returned to Massachusetts, carrying cash received from Fosher after the coins had been melted down.

On May 11, 1995, a federal grand jury returned a five count indictment against Fosher and Corso.

On June 27, 1995, Fosher executed a plea and cooperation agreement with the United States Attorney's Office, agreeing to plead guilty to four counts of the indictment.[1] The agreement provided that, at sentencing, the government would take the position under the United States Sentencing Guidelines ("U.S.S.G.") that Fosher's offense level was 33, for which the guideline sentencing range was 135 to 168 months. The agreement noted that Fosher objected to this calculation and reserved the right to argue for a lower offense level. Fosher agreed to cooperate with the government and, assuming he provided substantial assistance, the U.S. Attorney agreed to file a motion for a two level downward adjustment under U.S.S.G. § 5K1.1.

On July 6, 1995, Fosher pled guilty to Counts One through Four. At his March 5, 1996, sentencing hearing, the probation department presented its PSR, in which the department concluded that the four counts constituted seven groups of offenses. The

---

1. The United States Attorney's Office agreed to dismissed the fifth count.

probation department calculated the Adjusted Offense Level for each group and determined that the group relating to an invasion and robbery, executed by Fosher and others, of the home of a 62 year old Fort Lauderdale woman had the highest Adjusted Offense Level at 33. This included a two-level upward adjustment for an unusually vulnerable victim under U.S.S.G. § 3A1.1[2] and a four-level upward adjustment for being a leader or organizer of five or more participants under U.S.S.G. § 3B1.1.[3] After applying the grouping rules under U.S.S.G. § 3D1.4 and providing for a downward adjustment for acceptance of responsibility, the probation department concluded that Fosher's Total Offense Level was 33.

The probation department concluded that Fosher's Criminal History Category was III, including in the calculation a conviction for armed bank robbery under the FYCA.

On February 26, 1996, Fosher filed objections to the upward adjustments in calculation of the offense level for the Fort Lauderdale home invasion and to the inclusion of his FYCA conviction in the Criminal History Category calculation. He argued that the FYCA conviction should not be considered because it had been "set aside" pursuant to the FYCA on September 24, 1982.

At the sentencing hearing, the district court agreed with the findings in the PSR and imposed upward adjustments for an unusually vulnerable victim and for Fosher's role in the offense. The court further determined that Fosher's FYCA conviction was properly included in the Criminal History Category calculation. The district court, therefore, set Fosher's Total Offense Level at 33 and his Criminal History Category at III, resulting in a guideline sentencing range of 168 to 210 months. The government submitted a motion requesting that, in light of Fosher's substantial assistance, the court grant a downward departure and impose a 60–month sentence. The court allowed the government's § 5K1.1 downward departure motion, but sentenced Fosher to 78 months' imprisonment.

## DISCUSSION

### I. Unusually vulnerable victim

■ The government insists that the issue of whether the victim of the Fort Lauderdale home invasion was "unusually vulnerable" is a factual issue and therefore that the clear error standard applies. Fosher argues vigorously that the facts being undisputed, the only question presented is a legal one of the sentencing court's application of the guidelines to the facts, requiring *de novo* review. "[Q]uestions ... of the proper application of a legal standard to undisputed facts ... are usually called 'mixed questions' of fact and law." *United States v. Wright*, 873 F.2d 437, 442 (1st Cir.1989). As our cases in this context amply demonstrate, such issues of sentencing application are often difficult to pigeonhole as either predominantly factual or legal. *See, e.g., United States v. Newman*, 982 F.2d 665, 671 (1st Cir.1992); *United States v. Pilgrim Market Corp.*, 944 F.2d 14, 16 (1st Cir.1991); *United States v. Cousens*, 942 F.2d 800, 805–07 (1st Cir.1991); *United States v. Rule Indus.*, 878 F.2d 535, 542 n. 7 (1st Cir.1989). Because we remand the unusually vulnerable victim issue to the district court we need not decide the difficult standard of review question.

■ Section 3A1.1(b) of the Sentencing Guidelines calls for a two level upward enhancement

> [i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct.

We have recognized that this guideline "is primarily concerned with the impaired capac-

---

2. Section 3A1.1(b) provides in relevant part:
 If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, ... increase by 2 levels.

3. Section 3B1.1(a) provides in relevant part:

Based on the defendant's role in the offense, increase the offense level as follows:
(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

**56**

ity of the victim to detect or prevent the crime, rather than the quantity of harm suffered by the victim." *United States v. Gill,* 99 F.3d 484, 486 (1st Cir.1996). The question is whether " 'a particular victim was less likely to thwart the crime, rather than more likely to suffer harm if the crime is successful.' " *Id.* (quoting *United States v. Kaye,* 23 F.3d 50, 54 (2d Cir.1994)).

We have discouraged sentencing courts from making an "unusually vulnerable victim" finding based solely on the victim's membership in a particular class. *Id.* at 487; *United States v. Feldman,* 83 F.3d 9, 15 (1st Cir.1996) ("[I]n order to warrant a finding of unusual vulnerability, there must be some evidence, above and beyond mere membership in a large class, that the victim possessed a special weakness that the defendant exploited."). At the same time, we have recognized that in some cases inferences to be drawn regarding particular class characteristics may be so strong that "there can be little doubt about unusual vulnerability of class members within the meaning of section 3A1.1." *Gill,* 99 F.3d at 487. The Sentencing Commission recognized this when it used as an example under this section the robbery of someone confined to a wheelchair. *See* U.S.S.G. § 3A1.1 comment. n. 2; *see also Gill,* 99 F.3d at 487.

We are concerned with the application of section 3A1.1 in the context of this case. The PSR revealed that Fosher surveyed the victim's home and determined that it was occupied by an elderly woman, her daughter, and her daughter's infant. Following this surveillance, the perpetrators declined the use of weapons to commit the robbery. Based on the victim's age and the perpetrators' decision that the use of weapons would not be necessary, the district court concluded that Fosher knew or should have known that the victim in this case would have "impaired capacity" to prevent the entry into and robbery of her home. From our review of the record, it appears the district court failed to address the "individual characteristics" required to support a finding that a particular victim was unusually vulnerable. Because of this conclusion, we must remand this issue to the district court for its consideration.

## II. Role in the offense

 We review a district court's role in the offense determinations for clear error. *See United States v. D'Andrea,* 107 F.3d 949, 956 (1st Cir.1997). A court making a four-level role-in-the-offense adjustment under U.S.S.G. section 3B1.1(a) must first determine "whether the defendant acted as an organizer/leader of a specific criminal activity. If so, the court asks the separate question of whether that criminal activity involved five or more participants, defined in the Commentary as persons who are 'criminally responsible for the commission of the offense....' " *United States v. Preakos,* 907 F.2d 7, 10 (1st Cir.1990) (quoting U.S.S.G. § 3B1.1, Commentary). In determining a defendant's role in the offense, the sentencing court need not look only to the elements underlying the conviction, but may consider "the whole of the defendant's relevant conduct." *United States v. Savoie,* 985 F.2d 612, 615 (1st Cir.1993); *see also* U.S.S.G. Ch. 3, Pt. B, intro. comment. Fosher does not challenge the sentencing court's status determination. His argument focuses on whether the district court properly found five participants in the home invasion and robbery.

 The commentary defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 comment. app. n. 1. Fosher concedes that there were four criminally responsible participants: him, Chinn, Corso, and Schoff. At the sentencing hearing, the government argued that both Philip Corso and Bomengo were criminally responsible participants even though they did not actually participate in the robbery. We need only confirm that one of them was a criminally responsible participant to affirm the district court's upward adjustment. Philip Corso's assistance in devising the perpetrator's scheme is sufficient to find that he is a participant within the meaning of the guidelines. Philip Corso assisted Schoff in targeting the victim's home for the commission of this robbery, he provided the home in which the planning meeting took place, he participated in the planning meeting with the four

robbery perpetrators, and, in response to the perpetrators' discussion regarding the use of weapons, he advised against the necessity of weapons to gain entry into the victim's home. Such acts were sufficient to find Philip Corso to be a participant in the commission of this robbery. We therefore find no error in the district court's role in the offense determination.

### III. Criminal History Category

■ In 1977, Fosher was convicted of armed bank robbery under the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* (repealed 1984). In 1982, pursuant to the Act's set-aside provisions, *see* 18 U.S.C. § 5021, Fosher was unconditionally discharged and his conviction was set aside. Fosher challenges the sentencing court's inclusion of his FYCA set-aside conviction in the calculation of his Criminal History Category. He claims that his set-aside conviction is to be treated as an "expunged" conviction under U.S.S.G. § 4A1.2. We have yet to address the issue of whether a conviction set aside under the FYCA should be counted under the Sentencing Guidelines.[4] When faced with this issue, a majority of our sister circuits have ruled that an FYCA conviction may properly be included in calculating a defendant's criminal history, *see United States v. Moreno,* 94 F.3d 1453 (10th Cir. 1996); *United States v. Nicolace,* 90 F.3d 255 (8th Cir.1996); *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1996); *United States v. Levi,* 45 F.3d 453 (D.C.Cir.1995); *United States v. Ashburn,* 20 F.3d 1336 (5th Cir. 1994); *United States v. Gardner,* 860 F.2d 1391 (7th Cir.1988), while only one has deter-

mined that FYCA convictions are similar to expunged convictions and should not be considered under the guidelines, *see United States v. Kammerdiener,* 945 F.2d 300 (9th Cir.1991).[5]

Section 4A1.2(j) provides that expunged convictions are not to be counted in determining Criminal History Category. The Commentary provides the following:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.,* in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not to be counted.

U.S.S.G. § 4A1.2, comment, app. note 10. A set-aside under the FYCA is made for "reasons unrelated to innocence or errors of law" of the type that the guidelines contemplate are to be considered in calculating Criminal History. The FYCA, section 5021, provided:

> (a) Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.
>
> (b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of

---

4. Fosher claims that two opinions of this circuit relating to the FYCA support his contention that his set-aside convictions may not be included in calculating his criminal history. Both opinions are inapposite, as neither was decided under the Sentencing Guidelines. *See United States v. Doe,* 732 F.2d 229, 232 (1st Cir.1984) (ruling that FYCA does not allow record of conviction to be destroyed and noting that the FYCA set aside provision "prevents the fact of conviction from being used to the youth offender's legal detriment"); *Mestre Morera v. INS,* 462 F.2d 1030, 1032 (1st Cir.1972) (in ruling that FYCA conviction may not be used to deport petitioner, finding that purpose of FYCA is to give an offender "a second chance, free of all taint of a conviction").

5. Fosher also cites opinions from two other circuits for support, but none of those opinions ruled that FYCA set-aside convictions are not to be counted under the guidelines criminal history provisions. *See United States v. Corrado,* 53 F.3d 620, 621 n. 1 (3d Cir.1995) (noting that government conceded that FYCA conviction should not be counted); *United States v. Doe,* 980 F.2d 876 (3d Cir.1992) (ruling that FYCA's set aside provisions called for the actual removal of any records related to conviction); *United States v. Beaulieau,* 959 F.2d 375, 380–81 (2d Cir.1992) (holding that sealed record under Vermont juvenile statute was improperly considered in criminal history calculation).

the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

18 U.S.C. § 5021 (repealed). The language of the statute does not call for expunging a youth offender's records, but instead mandates that the youth offender shall receive a certificate to the effect that the conviction has been set aside. A conviction under the FYCA is set aside not because of legal error or innocence, but because the offender's "post-offense conduct has persuaded the court to terminate his sentence of probation before the assigned completion date." *United States v. McDonald*, 991 F.2d 866, 871 (D.C.Cir.1993) (analyzing a set-aside conviction under the District of Columbia's Youth Rehabilitation Act, analogous to the FYCA). The FYCA's use of the term "set aside" is not the same as the Guideline's treatment of "expunged" convictions, but is more analogous to the Guideline's definition of a "set aside" conviction, one that is to be counted in the criminal history calculation. Moreover, had Congress intended that all records of a youthful conviction under the FYCA be made completely unavailable or destroyed such that they could no longer be considered for any future purposes, Congress could have specified the remedy of expungement rather than a certificate of set-aside. *See United States v. Doe*, 732 F.2d 229, 232 (1st Cir.1984) (in affirming district court's refusal to destroy FYCA records, noting that ordering expungement under the statute would require a rewriting of the statute); *Ashburn*, 20 F.3d at 1342 (collecting cases).

■ In determining the import of this provision, the Supreme Court noted in dicta that the FYCA was intended to address the "numerous civil and social disabilities" that accompany a conviction, recognizing that "a conviction may result in the loss of the rights to vote, to hold a public office, to serve on a jury, and to practice various occupations and professions." *Tuten v. United States*, 460 U.S. 660, 664, 103 S.Ct. 1412, 1415, 75 L.Ed.2d 359 (1983). Although the FYCA was intended to benefit a youthful offender by providing a second chance to start life without the stigma of a criminal conviction,

*id.* ("Congress' purpose in adopting § 5021 was to promote the rehabilitation of youth offenders by providing a substantial incentive for positive behavior while serving a sentence under the YCA."); *Webster*, 606 F.2d at 1234–35 (noting that Congress "intended to give youthful ex-offenders a fresh start, free from the stain of a criminal conviction, and an opportunity to clean their slates to afford them a second chance, in terms of both jobs and standing in the community"), it was not meant to allow a recidivist to avoid increased penalties based on earlier criminal convictions. *See Ashburn*, 20 F.3d at 1343 ("[T]his beneficent offer of a 'second chance' to the immature offender should not be available as a shield for those whose original encounter with the criminal world is used as a springboard to a life of felonious conduct."); *McDonald*, 991 F.2d at 872 ("[I]f a juvenile offender turns into a recidivist, the case for conferring the benefit dissipates. Society's stronger interest is in punishing appropriately an unrepentant criminal." (citations omitted)). Thus, counting an FYCA set-aside conviction in calculating a defendant's criminal history is not contrary to the purposes of the FYCA.

■ Fosher further argues that consideration of the FYCA conviction violates the *ex post facto* clause, U.S. Const. art. I, § 9, cl. 3, because the law increases the punishment for his 1977 armed robbery conviction. An *ex post facto* law is one " 'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " *Dominique v. Weld*, 73 F.3d 1156, 1162 (1st Cir.1996) (quoting *Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987)). "The concern of the *ex post facto* prohibition is to assure that legislative acts 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.' " *United States v. Forbes*, 16 F.3d 1294, 1301 (1st Cir.1994) (quoting *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451 (1987)). As the Supreme Court has recognized, a state habitual offender statute, which increased present penalties based on prior criminal conduct, is not an *ex post facto* law, because the consideration of prior convictions imposes increased penalties

to the "latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948), *quoted in Forbes*, 16 F.3d at 1302. "*Gryger* thus recognized the legislature's authority to enact an enhanced penalty for future conduct preceded by a criminal conviction obtained prior to enactment of the enhanced penalty provision." *Forbes*, 16 F.3d at 1302. The district court's consideration of Fosher's FYCA conviction in determining his criminal history category did not violate the *ex post facto* clause.

## CONCLUSION

For the foregoing reasons, we *reverse* and *remand* in part, and *affirm* in part.