# United States Court of Appeals
## For the First Circuit

No. 03-2022

UNITED STATES OF AMERICA,

Appellee,

v.

ERIC J. DONNELLY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Lisi[*], District Judge.

Patricia A. DeJuneas, with whom Richard M. Egbert was on brief for appellant.
Andrea Picciotti-Bayer, Attorney, United States Department of Justice, with whom Michael J. Sullivan, United States Attorney, R. Alexander Acosta, Assistant Attorney General, S. Theodore Merritt, Assistant United States Attorney and Dennis J. Dimsey, Attorney, United States Department of Justice, were on brief for appellee.

May 27, 2004

---

[*]Of the District of Rhode Island, sitting by designation.

**LISI**, **District Judge**.  Eric J. Donnelly ("Donnelly") appeals from a 46-month sentence imposed following his guilty plea to conspiracy to violate the civil rights of jail detainees under his supervision, conspiracy to obstruct justice, obstruction of justice, and four counts of deprivation of rights under color of law.  On appeal, Donnelly argues that the sentencing court erred when it included a two-level enhancement pursuant to U.S.S.G. § 3A1.1 ("vulnerable victim").  Because we find that the district court committed no reversible error in its determination that one of Donnelly's victims was a "vulnerable victim," we affirm the sentence.

## I.  Background[1]

From December, 1989 through December, 1999, Donnelly was employed by the Suffolk County Sheriff's Department.  Donnelly worked at the Nashua Street Jail in Boston, Massachusetts, a detention center which houses pre-trial detainees.  Donnelly was an officer and supervisor at the jail and sometimes served as the lieutenant of the Sheriff's Emergency Response Team.

From at least June, 1998 through February, 2001, Donnelly and several other officers and supervisors had an unwritten agreement to use unjustified, excessive force to punish detainees

---

[1] Because this case was disposed of by a guilty plea, we accept the facts as presented in the uncontested portions of the Presentence Report and the sentencing hearing transcript.  United States v. Lagasse, 87 F.3d 18, 20 (1st Cir. 1996).

-2-

who "disrespected" the officers, "put hands" on the officers, or otherwise misbehaved. The agreement led to the use of excessive force in order "to teach the inmates a lesson." Donnelly and other officers and supervisors assaulted at least four detainees between April 15, 1999 and October 16, 1999. It is the factual circumstances surrounding the assault on one of the detainees, "L.G.,"[2] which give rise to this appeal.

During September and October of 1999, L.G. was detained at the Nashua Street Jail. L.G. suffers from Tourette's Syndrome, a neurological disorder which affects his ability to control his verbal and physical acts. L.G.'s Tourette's outbursts consisted of repetitious and involuntary physical movements, or tics, and uncontrollable verbal outbursts, which often included the use of profanity.

On October 16, 1999, L.G., in violation of jail rules, got up from his table to wash a piece of fruit. Officer William Benson ("Benson") admonished L.G. for getting up without permission, but permitted him to wash his fruit before sitting back down. What happened after L.G. returned to his seat is disputed. One version of the story is that L.G. sat down and said of Benson, "What an attitude." Another officer claims that L.G. said, "You

---

[2] The initials "L.G." are used simply to protect the identity of the victim.

fat f*ck." Regardless of what was said, L.G. was dismissed from dinner and returned to his locked cell in the medical unit.

Once back in his cell, L.G. began to feel his Tourette's symptoms act up. To lessen the effects of the Tourette's outburst, L.G. engaged in physical activity, which consisted of shadowboxing and bench pressing his bed. Benson, hearing the commotion, approached L.G.'s cell and said, "Shut the f*ck up," to which L.G. responded, "You shut the f*ck up. You people make fun of me around here all the time and I can't say nothing about it. F*ck you. No." The exchange between L.G. and Benson prompted Donnelly, who was in the medical unit watching a baseball game on television, to approach L.G.'s cell. Donnelly then said to L.G., "You will not talk to my officers that way." Donnelly and Benson then entered L.G.'s cell where they hit him repeatedly in the face, head, and body. During the assault, one or both of the officers[3] yelled, "We'll beat the Tourette's out of you."

On May 15, 2001, Donnelly was charged with conspiracy to violate the civil rights of detainees being held at the Nashua Street Jail. In particular, Donnelly was charged with seven counts consisting of: (1) conspiring to obstruct justice, in violation of 18 U.S.C. § 371; (2) obstruction of justice, in violation of 18 U.S.C. 1512(b)(3); (3) conspiring to violate rights, in violation of 18 U.S.C. § 241; and (4) deprivation of rights under color of

---

[3] It is not clear who uttered these words.

law, in violation of 18 U.S.C. § 242.  The indictment contained four individual counts of deprivation of rights under color of law, which included the L.G. assault.

On March 3, 2003, Donnelly entered into a plea agreement with the United States Attorney's Office, wherein Donnelly agreed to plead guilty to all counts with which he was charged.  The plea agreement provided that the government would take the position that Donnelly's total offense level was 21.  The plea agreement further provided that the government would recommend that Donnelly be sentenced at the low end of the guideline sentencing range.  In the event of an appeal, however, the agreement preserved the government's "right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it."

At the sentencing hearing on June 6, 2003, the court considered the Presentence Report ("PSR"), which included a two-level enhancement under U.S.S.G. § 3A1.1 for each of the four counts charging Donnelly with deprivation of rights under color of law.  The probation officer included the enhancement citing the fact that Donnelly's victims were detained in a jail cell when they were assaulted.  This fact, the probation officer believed, supported a finding that those victims were vulnerable victims under section 3A1.1.  Accordingly, the probation officer concluded that Donnelly's total offense level was 23.  Both the government

and Donnelly objected to the applicability of section 3A1.1 to each of the four counts.

The district court found that section 3A1.1 was not applicable on the grounds set forth in the PSR by the probation officer. Rather, the sentencing judge, relying on the PSR and his own observations of L.G. during the trial of several of Donnelly's co-conspirators,[4] advised the parties that he would apply the vulnerable victim enhancement to the assault on L.G. The district judge stated that he believed the enhancement should be applied in L.G.'s case because "in very large part the assault on [L.G.] occurred because he had Tourette's Syndrome." At Donnelly's request, the district court suspended the hearing to allow Donnelly time to prepare to address the district court's position that the vulnerable victim enhancement be applied with respect to Donnelly's assault on L.G.

On July 7, 2003, the sentencing hearing was re-convened. On that same day, just prior to the hearing, Donnelly filed an objection to the PSR, specifically objecting to the district court taking the statement, "We'll beat the Tourette's out of you," into account in its consideration of the applicability of section 3A1.1.

---

[4] The sentencing judge presided over the trial of three of Donnelly's co-conspirators, where he observed L.G.'s Tourette's outbursts during L.G.'s testimony at the trial. At the sentencing hearing, the judge informed counsel that he would take into consideration his observations of L.G. in determining whether section 3A1.1 should be applied to Donnelly.

Finding the objection untimely, the sentencing judge declined to consider it.

After hearing the arguments of counsel, the court determined that the two-level enhancement provided for by section 3A1.1 should be included in the sentencing calculation as it related to the L.G. incident. The court found that the assault occurred because of L.G.'s Tourette's Syndrome. Accordingly, the court determined Donnelly's total offense level to be 23, with a guideline range of 46-57 months. Donnelly was sentenced to 46 months imprisonment. Donnelly appeals his sentence. In accordance with the plea agreement, the government pursues its option to argue that the sentencing court imposed the correct sentence.

## II. Standard of Review

Before reaching the merits of this appeal, we must determine the appropriate standard of review. A sentencing court must make two distinct and separate findings to apply section 3A1.1: (1) that the victim is a "vulnerable victim"; and (2) that the defendant knew or should have known of the victim's unusual vulnerability. Both parties agree that the district court's findings of fact as they relate to whether or not L.G. is a vulnerable victim, by virtue of his Tourette's Syndrome, are reviewed for clear error and that the legal determinations of the

district court are subject to plenary review.  See United States v. Gill, 99 F.3d 484, 485 (1st Cir. 1996).

The government and Donnelly disagree, however, as to the appropriate standard of review as it relates to the second element of the vulnerable victim enhancement: whether Donnelly knew or should have known of L.G.'s unusual vulnerability.  The government argues that, although Donnelly objected to the enhancement on the grounds that L.G. was not a "vulnerable victim," he did not argue to the sentencing court that Donnelly did not know of L.G.'s vulnerability, and therefore the issue of Donnelly's knowledge of L.G.'s vulnerability was not properly preserved below.  The government, therefore, urges us to review this claim for plain error.  Donnelly argues that the plain error standard does not apply because he is not raising a new claim on appeal, but rather that he properly preserved the issue below by arguing against the application of section 3A1.1 generally.

We have said that an appellant must specifically raise before the district court any issues he or she wishes to preserve for our consideration.  See United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991) (noting that "arguments not seasonably addressed to the trial court may not be raised for the first time in an appellate venue").  In the court below Donnelly objected to the imposition of the enhancement based on his assertion that L.G. was not a "vulnerable victim."  Donnelly, however, did not argue

specifically that the enhancement could not be applied to Donnelly because there was no evidence to support a finding that Donnelly knew or should have known of L.G.'s vulnerability. Donnelly's failure to address the second element of the vulnerable victim enhancement requires that we review the court's ruling on this element for plain error. Thus, as it relates to the knowledge element of section 3A1.1, Donnelly bears the burden of showing that the district court committed "(1) an error, (2) that is plain, and (3) that affects substantial rights." United States v. Connolly, 341 F.3d 16, 31 (1st Cir. 2003) (quoting United States v. Downs-Moses, 329 F.3d 253, 263 (1st Cir. 2003)(internal quotations omitted)). If Donnelly can establish plain error, he then "must demonstrate that the error 'seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting United States v. Matos, 328 F.3d 34, 43 (1st Cir. 2003)).

III.  U.S.S.G. § 3A1.1.

Having established the standard of our review, we next turn to Donnelly's claims on appeal.

Section 3A1.1 of the Sentencing Guidelines provides that a two-level upward enhancement should be applied "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1) (Nov. 2002). Commentary to section 3A1.1(b) defines the term "vulnerable victim":

"vulnerable victim" means a person (A) who is a victim of the offense of conviction . . . ; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct. . . . [The section] applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability.

U.S.S.G. § 3A1.1, cmt. n.2. We have interpreted the term "susceptible to the criminal conduct" as being "primarily concerned with the impaired capacity of the victim to detect or prevent the crime, rather than the quantity of harm suffered by the victim." United States v. Fosher, 124 F.3d 52, 55-56 (1st Cir. 1997) (quoting Gill, 99 F.3d at 486).

Focusing on the language of section 3A1.1 and the section's commentary, a two-prong test must be satisfied before the enhancement is imposed: First, the sentencing court must find that the victim of the crime was vulnerable, that is, that the victim had an "impaired capacity . . . to detect or prevent the crime." Id. at 55-56 (quoting Gill, 99 F.3d at 486); and second, the sentencing court must find that the defendant knew or should have known of the victim's unusual vulnerability.

On appeal, Donnelly challenges the district court's application of the vulnerable victim enhancement on several grounds: (1) L.G. was not a vulnerable victim within the meaning of section 3A1.1 because he was not particularly susceptible to the assault; (2) the record does not support a finding, either directly

or by inference, that Donnelly knew or should have known that L.G. was particularly susceptible; and (3) there is no nexus between L.G.'s vulnerability and the assault.

We begin by disposing of Donnelly's third assignment of error: that the district court erred in applying section 3A1.1 because it did not find a nexus between L.G.'s vulnerability and Donnelly's crime. Donnelly urges us to adopt the analysis set forth in United States v. Monostra, 125 F.3d 183 (3d Cir. 1997), a Third Circuit case which the court remanded to the district court for further consideration of whether there was a nexus between the victim's vulnerability and the crime's success.

The nexus requirement is based on the general limitation that a sentencing court base its finding of unusual vulnerability on individualized findings of particular susceptibility, rather than on the victim's membership in a large class. See United States v. Lee, 973 F.2d 832, 834 (10th Cir. 1992) ("The language of the guideline requires that a victim be 'unusually vulnerable . . .' and the cases accordingly require that the sentencing court make particularized findings of vulnerability. Specifically, there should be a nexus between the victim's vulnerability and the crime's ultimate success." (emphasis in original)). "We have discouraged sentencing courts from making an 'unusually vulnerable victim' finding based solely on the victim's membership in a particular class," but have recognized that "in some cases

inferences to be drawn regarding particular class characteristics may be so strong that 'there can be little doubt about unusual vulnerability of class members within the meaning of section 3A1.1.'" Fosher, 124 F.3d at 56 (quoting Gill, 99 F.3d at 487). Since the "nexus" test is already a part of our analysis of whether the victim is a "vulnerable victim" under section 3A1.1, we find that it would be superfluous to incorporate a third, independent "nexus" prong into our discussion of the applicability of the vulnerable victim enhancement. We therefore focus on the two-prong formulation: (1) that the victim was unusually vulnerable, and (2) that the defendant knew or should have known of the victim's unusual vulnerability.

## A. Unusual Vulnerability

Donnelly challenges the district court's application of section 3A1.1, arguing that L.G. is not a "vulnerable victim." First Donnelly asserts that the district court erred in applying section 3A1.1 because the facts before the district court did not support an individualized finding of vulnerability.[5] We disagree.

---

[5] The government contends that the sentencing court could have found L.G. particularly susceptible without having to make an individualized finding of particular susceptibility. See Gill, 99 F.3d at 487 ("In some cases the inference . . . may be so powerful that there can be little doubt about unusual vulnerability of class members within the meaning of section 3A1.1.") Since, however, we find that the district court did make an individualized finding of particular susceptibility, we need not decide whether an inmate or detainee who suffers from Tourette's Syndrome and is the victim of a plan to assault individuals who are disruptive or disrespectful to persons in authority carries with it so strong an inference that

The record below amply supports the district court's determination that L.G. was unusually vulnerable to the assault, that is, that he had an "impaired capacity . . . to detect or prevent the crime." Fosher, 124 F.3d at 55-56 (quoting Gill, 99 F.3d at 486).

L.G. was reprimanded by Benson for breaking jail rules, exchanged words with another officer over the incident, and as a result, was sent back to his locked cell in the medical unit. Back in his cell, L.G. found himself exhibiting symptoms of a Tourette's related outburst. To lessen the effects of his outburst, L.G. engaged in physical activity which induced Benson, and later Donnelly, to approach L.G.'s cell. It was the exchange between Benson and L.G., which resulted from L.G.'s Tourette's outburst, which led to the assault. Thus, it is reasonable to conclude, as did the district court, that L.G.'s condition made him particularly susceptible to the attack.

Furthermore, these facts illustrate the individual characteristics possessed by L.G. which distinguish him from the other detainees: a detainee who does not suffer from Tourette's Syndrome can make a conscious decision not to act in ways which may provoke jail officers to "teach him a lesson." L.G.'s Tourette's Syndrome impaired his capacity to prevent the behavior which would lead to the assault by Donnelly. We therefore find no clear error

there is little doubt as to the vulnerability of class members.

-13-

in the district court's conclusion that L.G. was a "vulnerable victim" under section 3A1.1.

B.   Defendant's Knowledge of Unusual Vulnerability

We now turn to the second element of the vulnerable victim enhancement, that Donnelly knew or should have known of L.G.'s particular susceptibility to the assault. Before doing so, however, there is an evidentiary matter we must consider: which facts are properly before this Court in our consideration of this issue. Donnelly argues that we should not consider as fact the statement contained in the PSR and the government's presentation of predicate facts at the plea hearing that the officers shouted, "We'll beat the Tourette's out of you," during L.G.'s assault. Donnelly asserts that the statement is too vague because there is no indication as to which of the officers made the statement. Donnelly also argues that because L.G. did not mention the statement during his trial testimony, the court erred in finding the statement a "fact" proven by a preponderance of the evidence. We disagree. The sentencing judge properly took into account his observations of L.G. when he testified at the trial of Donnelly's co-conspirators.[6] The statements made in the PSR and the government's presentation of predicate facts were also properly

_____

[6] First hand observations of the sentencing judge are sufficient for the sentencing judge to make an individualized determination of vulnerability necessary to impose the enhancement set forth in section 3A1.1. See United States v. Pavao, 948 F.2d 74, 78 (1st Cir. 1991).

-14-

considered because Donnelly failed to object to the statements in a timely manner.[7]  Since the sentencing court may properly adopt the statement as fact, we find that it is proper for us to consider the statement when addressing the matter now before this Court.

Donnelly challenges the application of section 3A1.1 arguing that the record does not support a finding, either directly or by inference, that Donnelly knew or should have known that L.G. was unusually vulnerable.  After reviewing the record, it does not appear that the trial judge explicitly addressed this element of the vulnerable victim calculus.  The district judge did, however, make a general finding that the vulnerable victim enhancement applied in this case and, by so doing, implicitly found that Donnelly knew or should have known of L.G.'s vulnerability.

Our determination that the plain error standard must be applied to the second prong of this analysis places a substantial burden on Donnelly: "Where the error defendant asserts on appeal depends upon a factual finding the defendant neglected to ask the district court to make, the error cannot be 'clear' or 'obvious'

---

[7] Under Federal Rule of Criminal Procedure 32(f)(1), "[w]ithin 14 days after receiving the [PSR], the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report."  Donnelly, however, did not make a timely objection to the PSR which contained the statement.  Donnelly's objection to the statement was made the day of the final sentencing hearing, well after the fourteen-day time period had passed.  We also note that the same language was included in the government's presentation of predicate facts at the change of plea hearing, and there too, Donnelly posed no objection.

unless the desired factual finding is the only one rationally supported by the record below." United States v. Olivier-Diaz, 13 F.3d 1, 5 (1st Cir. 1993). We find that Donnelly fails to meet his burden that the only rational conclusion supported by the record is that Donnelly did not know of L.G.'s unusual vulnerability. The evidence in the record which would tend to support a conclusion that Donnelly knew or should have known of L.G.'s unusual vulnerability includes: (1) the district judge's own observations of L.G., which included Tourette's related outbursts; (2) that during the beating of L.G., one of the officers was heard yelling, "We'll beat the Tourette's out of you"; and (3) that just prior to L.G.'s assault, L.G. said, "You people make fun of me around here all the time and I can't say nothing about it." Clearly then, we cannot conclude that a finding that Donnelly did not know or should not have known of L.G.'s unusual vulnerability is the only finding rationally supported by the record. While the district court's silence is somewhat troublesome, we reject Donnelly's argument that the district judge committed plain error when he found the vulnerable victim enhancement applicable to the L.G. incident.

## IV. Conclusion

For the reasons set forth herein, the sentence of the district court is **affirmed**.