# United States Court of Appeals
## For the First Circuit

No. 15-1961

UNITED STATES OF AMERICA,

Appellee,

v.

JANE E. O'BRIEN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Lipez, and Barron,
Circuit Judges

Inga L. Parsons on brief for appellant.
Carmen M. Ortiz, United States Attorney, and Stephen E. Frank,
Assistant United States Attorney, on brief for appellee.

August 31, 2017

**LIPEZ**, <u>**Circuit Judge**</u>.  Jane E. O'Brien, a professional investment adviser, engaged in a long-running scheme to defraud several of her clients -- mostly elderly women who relied on her financial advice and friendship -- out of their life savings.  This scheme was eventually uncovered, and she pled guilty -- in two separate cases -- to securities fraud, investment adviser fraud, wire fraud, and mail fraud.  O'Brien now appeals her sentence on both procedural and substantive grounds.  Specifically, she challenges the district court's imposition of a two-level obstruction of justice enhancement and a two-level vulnerable victim enhancement, as well as contending that the length of her sentence was substantively unreasonable.  Finding no basis for undoing the district court's well-reasoned sentencing decisions, we affirm.

## I. Background

We provide here only a brief synopsis of the essential facts of this case, reserving additional detail for the analysis that follows.  Because this appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the change-of-plea colloquy, the undisputed portions of the presentence investigation report ("PSR"), and the transcript of the disposition hearing. <u>United States</u> v. <u>Rivera-González</u>, 776 F.3d 45, 47 (1st Cir. 2015).

Over approximately eighteen years, O'Brien -- a registered securities broker who was employed at various times by

two large brokerage firms (Merrill Lynch and Smith Barney) -- persuaded some of her clients to withdraw money from their brokerage accounts and give the money to her personally to invest on their behalf.  After gaining control of her client's money, however, O'Brien did not make the promised investments.  Instead, she used her clients' money to pay personal expenses or to repay money given to her by other clients.  To perpetuate and conceal the fraud, she made lulling payments, forged signatures, and repeatedly lied to her clients about the state of their investments.

In April 2012, after one of her clients filed a complaint with the Financial Industry Regulatory Authority, O'Brien, through her attorney, met with an assistant United States Attorney and disclosed that she had misappropriated funds from one of her clients, RC.[1]  During this meeting, O'Brien also provided the government with the names of other former clients from whom she had improperly obtained money.  Two months after this meeting, O'Brien pled guilty to one count of securities fraud, under 15 U.S.C. § 78j(b), based on her defrauding of RC.  On May 30, 2013, O'Brien was sentenced to thirty-three months in prison on this count.  O'Brien raises no claims of error specific to this sentence.

---

[1] The parties have identified the victims by their initials. We do the same.

While O'Brien was in custody awaiting sentencing on the 2012 case, she was also charged in an eight-count indictment with investment fraud, wire fraud, and mail fraud for conduct related to three other former clients: PN, EG, and KD. O'Brien subsequently pled guilty -- without a plea agreement -- to all but one of the counts charged in the indictment. At a hearing on August 6, 2015, the court sentenced O'Brien to forty-five months of imprisonment, to be served consecutively to the thirty-three-month term of imprisonment from the 2012 case. Because O'Brien's cases were aggregated for purposes of calculating the applicable guidelines sentencing range ("GSR"), the district court's imposition of a consecutive sentence of forty-five months brought O'Brien's total sentence (seventy-eight months) to the bottom end of the advisory GSR. O'Brien timely appealed.

## II. Discussion

O'Brien challenges the district court's imposition of two, two-level sentencing enhancements: the first, for obstruction of justice, under U.S.S.G. § 3C1.1; the second, a vulnerable-victim enhancement, under U.S.S.G. § 3A1.1(b)(1). She also contends that her sentence was substantively unreasonable. We address each argument in turn, reviewing O'Brien's preserved claims of error under our "multifaceted" abuse-of-discretion standard, whereby "we apply clear error review to factual findings, de novo review to interpretations and applications of the

- 4 -

guidelines, and abuse of discretion review to judgment calls."
United States v. Cox, 851 F.3d 113, 119 (1st Cir. 2017) (quoting
United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017)).

## A. Obstruction of Justice Enhancement

Under U.S.S.G. § 3C1.1, a defendant's offense level is increased by two levels if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense."  Covered conduct includes, among other things, "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . or attempting to do so."  Id. cmt. n.4(A).

The conduct that led to this enhancement involved payments O'Brien made or promised to make to some victims during the government's investigation of her crimes, as well as related conversations O'Brien had with an attorney for one of her victims. Specifically, between April and June 2013, O'Brien -- who was in prison at the time, having been remanded pending sentencing in the 2012 case for violating her release conditions -- directed her brother to make payments to PN and EG.  From prison, O'Brien also had several phone calls with PN's attorney, Michael Faherty, in which she tried to convince Faherty that the money given to her by

PN was a series of personal loans, not money to be invested on PN's behalf.[2]  These conversations were lawfully recorded.[3]  In one conversation on April 10, 2013, the following exchange occurred:

> FAHERTY: I'm just concerned that [PN] is very clear that these monies went to you as investments, investments in some projects you were working on, and I just need to get her paid back so, she's destitute.
>
> O'BRIEN: Right, well and that's my goal too, but the terminology is a problem if that's what she's relaying to them, because it makes it sound like I did, presented her with some kind of concrete investment which I did not, it was clearly, at least as far as I'm concerned, you know, her investing in me as a person and helping me to be able to move forward with some things I've been working on.  But if she, you know, pursues it on that, along those lines, that really is a problem for me.

On a subsequent recorded call on April 29, 2013, O'Brien told Faherty that PN would continue to receive monthly payments from

---

[2] For the first time on appeal, O'Brien alleges that Faherty was an informant "planted by the government" "to try to entrap [O'Brien] into mak[ing] incriminating statements," and that Faherty was "directing the conversations in an obvious effort . . . to get O'Brien to respond in a certain way."  O'Brien cites no evidence in the record supporting this contention, however, and we can find none.  Instead, the record demonstrates that O'Brien argued at sentencing that Faherty initially contacted her after he contacted her brother to discuss the periodic payments O'Brien was making to PN.

[3] Facilities that record inmates' calls or visitations generally inform inmates that their conversations will be recorded, except for conversations with the inmate's attorney.  See United States v. Novak, 531 F.3d 99, 100 (1st Cir. 2008) (O'Connor, J.) ("Massachusetts and the Federal government have both promulgated regulations prohibiting prison officials from monitoring phone calls between inmates and their attorneys."); see also 28 C.F.R. § 540.102.

O'Brien's brother.  When Faherty asked O'Brien what she would like

to say to PN, O'Brien stated:

> My feeling and my situation in terms of my obligation to
> [PN] has not changed and will not change.  And I am
> trying to do whatever I can to make sure that my
> obligation is taken care of.  I'd rather it be taken
> care of sooner rather than later.  But a lot is going to
> depend I'm thinking on, you know, what people decide
> they want to talk to the U.S. Attorney about and um, you
> know, how much he wants to make this a big deal.  I
> don't, you know, I don't know how else to say [it].

During another call with Faherty the same day, O'Brien stated:

> I'm totally sick about it and I wish that I could be,
> you know, more forthcoming to you right now but it
> . . . and the matter is I simply can't [be]cause I don't
> have anything in front of me.  And that's why I'm trying
> to get out of here because everything they've got me in
> here for is completely false.  And, but when she says
> that she invested in me it -- and I'm not trying to put
> words into her mouth -- but I am, or to say something
> that it wasn't, it was that she believed in me in terms
> of the business I was trying to build, but the money
> that came to me was in the form of personal loans.  As
> far as I'm concerned that's what it was and I believe
> that that's what she would say. But she would say it in
> terms of, yes she felt that she was helping me build my
> business.

Based on this conduct, the PSR recommended that a two-

level enhancement for obstruction of justice be imposed.  O'Brien

objected to the enhancement, both in her objections to the PSR and

at sentencing, contending that principles of res judicata and

collateral estoppel barred the court's consideration of the

enhancement, or, in the alternative, that, taken in context, her

statements to Faherty did not demonstrate a "willful intent to

obstruct justice."  Both contentions are meritless.

- 7 -

As to O'Brien's res judicata and collateral estoppel arguments, she contends that, because her conversations with Faherty were discussed at sentencing in her 2012 case, and no obstruction-of-justice enhancement was imposed when the court calculated her GSR, the government was not permitted to request, and the court was not permitted to impose, the enhancement in this case. This argument makes little sense. Putting aside the question of when or if various preclusion doctrines might apply to a district court's calculation of an advisory GSR, O'Brien's obstructive conduct, as the government explained at sentencing, was still being investigated when she was sentenced in her 2012 case, and the question of whether the enhancement applied was never decided. Hence, the district court was in no way precluded from considering the obstruction-of-justice enhancement.

As to O'Brien's claim that her actions did not demonstrate a willful intent to obstruct justice, she argued at sentencing that she specifically told Faherty that she was not trying to influence him or "to put words in [PN's] mouth," and that the conversation, taken in context, did not demonstrate obstructive intent. The district court, however, rejected these claims after the following exchange with O'Brien's attorney:

> THE COURT: So, if somebody in a conversation says, "I'm not trying to influence you" and then in the next sentence says, "I am trying to influence you," the second statement doesn't count?

- 8 -

MS. PUCCI: Well, I just -- I disagree that any of these statements are clear.

THE COURT: Well, I mean, but that's the bottom line is, if the conversation is inconsistent when one thing says, I'm not trying to influence you and then in the next breath, she says, But you know, if they want to get repaid, they'd better not talk to the Feds, does the first statement negate the second one?

MS. PUCCI: Well, you have to look at overall, Your Honor, whether there was willful intent to obstruct. So, I understand the point the Court is trying to make. I would argue that none of the statements clearly have her trying to get the victims to say anything different, and some of them are clear implications that she's backing off and saying, Look, I'm not trying to get you to advise her to say something different.

THE COURT: All right. I've heard enough, and the objection is overruled. I will accept the recommendation of the Probation Officer to apply a two-level increase for obstruction of justice.

O'Brien claims that the district court's failure to make particularized factual findings before imposing the enhancement amounts to reversible error. However, such findings are unnecessary where the sentencing court speaks generally to the pertinent considerations and the relevant facts are apparent from the record. See United States v. Aker, 181 F.3d 167, 172 (1st Cir. 1999) ("Although particularized findings are certainly helpful, the ultimate question is whether the district judge did find a willful obstruction or attempted obstruction and whether the evidence supports these findings.") (citation omitted). Here, the PSR spelled out the factual underpinnings for the enhancement -- which O'Brien did not contest -- and the government argued that

those facts demonstrated that O'Brien attempted to unlawfully influence one of her victims not to cooperate with the government by suggesting that the victim had a better chance of getting repaid if she did not do so. Although O'Brien asserts that she, in fact, had no obstructive intent, and that her conduct did not "amount to a threat, intimidation, or unlawful influence," within the meaning of U.S.S.G. § 3C1.1, the record fully supports the district court's contrary inference from the record. Hence, the district court did not clearly err. See United States v. Jones, 778 F.3d 375, 383 (1st Cir. 2015) ("When the raw facts are susceptible to more than one reasonable inference, a sentencing court's choice between those competing inferences cannot be clearly erroneous.").

Finally, O'Brien argues that her statements, within the context of a communication with a victim's attorney, fail to demonstrate obstructive intent. This argument, however, simply provides a new and irrelevant gloss on O'Brien's other arguments. Attempting to influence a witness not to cooperate with the government, either directly or indirectly, is just the type of conduct covered by § 3C1.1. See United States v. Monell, 801 F.3d 34, 50-51 (1st Cir. 2015) (upholding obstruction-of-justice enhancement where defendant attempted to persuade others to testify falsely); United States v. Anderson, 139 F.3d 291, 298 (1st Cir. 1998) (upholding obstruction-of-justice enhancement where defendant instructed his son to give victim $3,500 to retract

accusations).  The fact that O'Brien's statements were made indirectly through a victim's attorney does not make them any less obstructive.[4]  Not only do the guidelines not make this distinction, see § 3C1.1 cmt. n.2, but we can find no support for it in our precedent, or for O'Brien's assertion that Faherty, as an attorney, was required to warn her that her comments could be construed as obstructive.  In sum, the district court drew a reasonable inference from the undisputed facts that O'Brien attempted to improperly influence one of her victims through that victim's counsel.  No more was required.

**B. Vulnerable Victim Enhancement**

Under U.S.S.G. § 3A1.1(b)(1), the defendant's offense level is raised two levels if "the defendant knew or should have known that a victim of the offense was a vulnerable victim."  The Guidelines define a "vulnerable victim" as "a person (A) who is a victim of the offense of conviction . . . ; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  U.S.S.G. § 3A1.1, cmt. n.2.  "We have interpreted the term 'susceptible to the criminal conduct' as being 'primarily concerned with the impaired capacity of the victim to detect or

---

[4] Moreover, as the government notes in its brief, and O'Brien did not dispute, she also reached out to several victims from prison.

prevent the crime, rather than the quantity of the harm suffered by the victim.'" United States v. Bailey, 405 F.3d 102, 113 (1st Cir. 2005) (quoting United States v. Donnelly, 370 F.3d 87, 92 (1st Cir. 2004)).

A sentencing court must make two separate determinations before imposing a § 3A1.1(b)(1) enhancement. First, the court must conclude "that the victim of the crime was vulnerable, that is, that the victim had an 'impaired capacity . . . to detect or prevent the crime.'" Donnelly, 370 F.3d at 92 (quoting United States v. Fosher, 124 F.3d 52, 55–56 (1st Cir. 1997)). Second, the court must find "that the defendant knew or should have known of the victim's unusual vulnerability." Id.

O'Brien objected to the vulnerable-victim enhancement, both in her objections to the PSR and at the sentencing hearing, contending that (1) her victims were not "unusually vulnerable" within the meaning of U.S.S.G. § 3A1.1(b)(1); and (2) because she already received a four-level enhancement under U.S.S.G. § 2B1.1(b)(19)(A)(iii) for violating securities laws as an investment adviser, imposing the vulnerable-victim enhancement for defrauding her clients amounted to impermissible double counting. We reject both arguments.

As to O'Brien's first argument, she asserted that her victims were not unusually vulnerable because, despite their age, they were "college-educated women who chose to invest their funds"

with her, yet she failed to contest any of the facts set forth in the PSR characterizing her victims.  As the Probation Officer explained in response to O'Brien's objections:

> The victims in this case are not characterized as vulnerable victims solely due to their age, but primarily due to each of their individual circumstances and the nature of their relationships with the defendant.  As explained by the government in the additional information provided in response to the defendant's objections, each of the victims trusted the defendant as a close friend and became entirely dependent on her to manage their financial affairs when they were faced with difficult personal circumstances. By virtue of the defendant's close relationships with these woman [sic], the defendant knew that they were particularly susceptible to the criminal conduct.

As the PSR went on to explain, one victim, EG, "was 70 years old at the time of the fraud against her, and had recently had a stroke that left her permanently disabled and unable to work."  Another victim, KD, was "89 years old, recently widowed, and had serious health problems at the time of the fraud against her in 2012."

Given these unchallenged facts, the district court did not err in applying the enhancement.  Indeed, we have upheld a vulnerable-victim enhancement under similar circumstances.  See United States v. Pol-Flores, 644 F.3d 1, 4 (1st Cir. 2011) (upholding vulnerable-victim enhancement because victim was "particularly susceptible [to fraud] based on her advanced age, status as a widow, difficulty resolving her husband's estate, and desire to invest the money to establish an income").

Moreover, as the government argued at sentencing, O'Brien had many other clients as an investment adviser, but she chose only to defraud those who were financially unsophisticated, had weak support networks, or were in frail health. Although O'Brien asserts on appeal that the district court erred by failing to specifically articulate why each victim qualified as vulnerable, the district court was entitled to accept the uncontested facts in the PSR as true. See United States v. Prochner, 417 F.3d 54, 66 (1st Cir. 2005) (upholding reliance on a PSR's listing of victims and loss amounts "[i]n the absence of rebuttal evidence beyond defendant's self-serving words"); United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003) ("[I]f the defendant's objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR."). Here, the vulnerable-victim enhancement is amply supported by the record.

O'Brien's contention that the vulnerable-victim enhancement is already accounted for in the four-level enhancement under U.S.S.G. § 2B1.1(b)(19)(A)(iii) is also without merit. Section 2B1.1(b)(19)(A) applies where "the offense involved . . . a violation of securities law and, at the time of the offense, the defendant was . . . an investment adviser." The focus of this enhancement, like the more general "abuse of position of trust or use of special skill" enhancement under § 3B1.3, is on the

defendant's conduct: the use of her position as an investment adviser to commit her crimes. For this reason, the guidelines specifically prohibit the application of both a § 2B1.1(b)(19)(A) enhancement and an abuse-of-trust enhancement under § 3B1.3 in the same case. See U.S.S.G. § 2B1.1, cmt. n.15(C) ("If [§ 2B1.1](b)(19) applies, do not apply § 3B1.3.").

Unlike the focus of the investment-adviser and abuse-of-trust enhancements, however, the focus of the vulnerable-victim enhancement under § 3A1.1(b)(1) is the "vulnerability of the victim and the defendant's awareness of that vulnerability." United States v. Stella, 591 F.3d 23, 30 (1st Cir. 2009). Because "[n]ot all [investment-adviser frauds] involve vulnerable victims . . . there is no double counting." Id. Indeed, the kind of "double counting" O'Brien objects to is "often perfectly proper" where two enhancements address different sentencing concerns. Id. at 30 n.9 (quoting United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994)), and we have upheld the imposition of similar enhancements over a defendant's "double-counting" objections. See id. at 30; see also United States v. Burnett, 805 F.3d 787, 795 (7th Cir. 2015) (upholding imposition of both abuse-of-trust and vulnerable-victim enhancements because "the two enhancements punished different aspects of [the defendant]'s conduct").

Further, although "some guidelines expressly prohibit applying certain enhancements because doing so would lead to double

counting," we will rarely find that two enhancements impermissibly overlap where the guidelines make no explicit prohibition. See Stella, 591 F.3d at 30 n.9; see also Lilly, 13 F.3d at 19 ("We believe the [Sentencing] Commission's ready resort to explicitly stated prohibitions against double counting signals that courts should go quite slowly in implying further such prohibitions where none are written."). Thus, although the guidelines explicitly prohibit the application of both an investment-adviser enhancement under U.S.S.G. § 2B1.1(b)(19)(A)(iii) and an abuse-of-trust enhancement under U.S.S.G. § 3B1.3, the guidelines contain no explicit bar against imposing a vulnerable-victim enhancement along with either of those two enhancements. We see no reason to read such a prohibition into the guidelines where the Sentencing Commission has declined to do so. See United States v. Fiume, 708 F.3d 59, 62 (1st Cir. 2013) ("Given the Commission's proclivity for indicating when double counting is forbidden, we are reluctant to infer further such instances out of thin air.").

## C. Substantive Reasonableness

Finally, O'Brien claims that her bottom-of-the-guidelines sentence was substantively unreasonable. For a preserved challenge to the substantive reasonableness of a sentence, "we proceed under the abuse of discretion rubric, taking account of the totality of the circumstances." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). O'Brien, however,

- 16 -

did not object below. In such cases, the applicable standard of review in this circuit is "somewhat blurred" as to whether the ordinary abuse of discretion standard or the plain error standard applies. Id. at 228. Regardless, we need not decide this issue because O'Brien's claim fails under either standard.

As we have repeatedly emphasized, a challenge to the substantive reasonableness of a sentence is particularly unpromising when the sentence imposed comes within the confines of a properly calculated GSR. Cox, 851 F.3d at 126. We will deem a sentence substantively reasonable "so long as it rests on a 'plausible sentencing rationale' and embodies a 'defensible result.'" Ruiz-Huertas, 792 F.3d at 228 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). "[T]here is not a single reasonable sentence but, rather, a range of reasonable sentences," and, "[c]onsequently, reversal will result if -- and only if -- the sentencing court's ultimate determination falls outside the expansive boundaries of that universe." Martin, 520 F.3d at 92.

The district court's rationale for the sentence was clear and justified. In sentencing O'Brien, the court emphasized the "utter depravity" of her conduct, which it described as "bilking vulnerable friends . . . out of their entire life savings for what can only be described as your insatiable greed." The court further justified the sentence, explaining that a "significant sentence" was necessary, "not only to deter you from

- 17 -

ever committing another such crime but also to deter anyone else who thinks he or she can bilk innocent investors out of their hard-earned money."  Given the undisputed facts of this case, the bottom-of-the-guidelines sentence imposed falls well within the universe of reasonable sentences, and none of O'Brien's contrary assertions have any merit.

Affirmed.