**SEALED APPELLANT,**
**Plaintiff–Appellant,**

v.

**SEALED APPELLEE, Defendant–**
**Appellee.**

No. 97–30160.

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1997.

Stephen A. Higginson, Assistant U.S. Atty., New Orleans, LA, for Plaintiff–Appellant.

Sealed Appellee, Kenner, LA, pro se.

Before REYNALDO G. GARZA, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The United States appeals an order commanding all executive branch agencies to expunge the records of a particular defendant's overturned convictions. We reverse.

## I.

In 1986, the defendant (designated in the caption as "Sealed Appellee") was convicted of wire fraud and conspiracy, and we affirmed. Before the appeal became final, however, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which foreclosed one avenue for obtaining a wire fraud conviction. *See McNally*, 483 U.S. at 359–61, 107 S.Ct. at 2881–82. Because the jury instructions had not excluded the possibility that the fact-finder could have found the defendant guilty of both conspiracy and wire fraud under the now-prohibited theory, we set aside the conviction in a subsequent action brought under 28 U.S.C. § 2255.[1]

Six years later, the defendant returned to the court of conviction and filed a petition for "expunction" of the records of his now-overturned convictions. Citing interference with his professional law-enforcement activities, he prayed for an order expunging all the federal judicial records of the conviction and forcing all executive branch agencies having a record of the charges to do the same.

The district court granted the request, reasoning that it had jurisdiction to enter an expungement order against the executive branch:

> While the Fifth Circuit has questioned in *dictum* whether the constitutional separation of powers would permit a district court to order expungement of the records of the executive branch, it has not addressed the question. *United States v. Scott*, 793 F.2d 117, 118 (5th Cir.1986). Most federal courts to address the issue have found that the district court has such equitable power. *See United States v. Janik*, 10 F.3d 470 (7th Cir.1993) (dissent,

---

1. In the second appeal, we concluded that because the defendant had already served his sentence, a habeas corpus action was inappropriate. Instead, we remanded to district court for a writ of *coram nobis* proceeding.

collecting cases) (*Janik* is the only case to find that courts have no such authority because of the separation of powers.).

On the merits, the court held:

Pursuant to Fifth Circuit precedent, the Court may not order expungement of records if the facts show a violation of the charged crime, but the conviction was overturned on constitutional grounds. *Rogers v. Slaughter,* 469 F.2d 1084 (5th Cir.1972) (defendant clearly violated state law, but he was not advised of his right to counsel). The Court may not order expungement of arrest records where a conviction was validly obtained. *United States v. Scott,* 793 F.2d 117 (5th Cir.1986).

The court distinguished these precedents, stating: "More than being presumed innocent or found innocent of a valid crime, [defendant] was charged with and convicted of crimes which did not exist." *Id.* Thus, the court entered an order compelling all federal agencies with a record of the conviction to expunge their records.

The government now appeals, arguing that federal courts lack jurisdiction to enter expungement orders against executive branch actors. In the alternative, the government maintains that the defendant failed to make the showing needed to obtain expungement.

## II.

 We review jurisdictional issues *de novo. See, e.g., Robinson v. TCI/US West Communications, Inc.,* 117 F.3d 900, 904 (5th Cir.1997). Challenges to subject matter jurisdiction can be raised at any time and *sua sponte. See, e.g., Johnston v. United States,* 85 F.3d 217, 218 n. 2 (5th Cir.1996).

 We review the decision to grant expungement for an abuse of discretion. *See United States v. International Harvester Co.,*

2. Courts have supervisory powers over their own records. In this case, the judicial proceedings have been expunged. That portion of the petition was not challenged in the district court and is not on appeal.

3. "However broad a federal court's discretion concerning equitable remedies, it is absolutely clear ... that in a nondiversity suit a federal court's power to grant even equitable relief depends on the presence of a substantive right

720 F.2d 418, 419 (5th Cir.1983). We evaluate the district court's legal determinations *de novo* and its factual determinations for clear error. *Cf., e.g., Squires–Allman v. Callahan,* 117 F.3d 918, 920 (5th Cir.1997) (award of attorneys' fees under the Equal Access to Justice Act).

## III.

The government correctly argues—but not entirely for the right reasons—that the district court lacked jurisdiction over the defendant's petition. The government maintains that, absent statutory or constitutional commands, federal courts are powerless to employ the expungement remedy against the executive branch. Because this conflicts with our caselaw—and courts' traditional ability to fashion remedies in the face of rights violations—we disagree.

To have standing, a party claiming expungement of executive branch records must make a showing of more than mere burden. Unlike a person asking for expungement of judicial records—over which the court has supervisory powers[2]—the claimant must show an affirmative rights violation by executive branch officers or agencies to justify the intrusion into the executive's affairs.[3] This injury must be such that no other remedy would afford relief.

The defendant has not asserted any violation of rights by executive branch officers or agencies. For him to have standing,[4] therefore, we would have to find an independent "right to expungement." No court, however, has ever held expungement to be a "right." Rather, courts have used expungement as a *remedy* for other constitutional or statutorily-created rights that have been violated by a state or other governmental agency.

derived from federal law." *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 400, 91 S.Ct. 1999, 2006, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring in the judgment).

4. *See generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992) (outlining the injury requirements for standing under Article III).

### A.

#### 1.

The Seventh Circuit has held that federal courts have no jurisdiction to enter an expungement order against the executive branch: "To obtain expungement of records maintained by the FBI or any other Executive Branch agency, [the claimant] (or anyone else) must go directly to the Executive Branch." *United States v. Janik*, 10 F.3d 470, 473 (7th Cir.1993). The court found no constitutional basis for granting such relief: "[T]here is nothing in the Constitution that provides jurisdiction to grant or deny motions for expungement. Certainly, the Constitution does not prohibit the government from maintaining what are admittedly accurate records of [the claimant's] indictment and conviction." *Id.* at 471.[5]

The court also held that it lacked a statutory basis for providing the claimant such relief, rejecting the contention that 18 U.S.C. § 3231, which grants the federal courts jurisdiction over federal crimes, was sufficient. Section 3231 "does not vest the federal district courts with authority to invade the Executive Branch of government, in particular the Attorney General and, through her, the FBI. In fact the Attorney General is required by at least one statute, 28 U.S.C. § 534, to collect criminal records . . . ." *Id.* at 471.

#### 2.

*Janik* elucidates the limits of the expungement remedy. Because it is so intrusive on those agencies that enforce and administer the law, expungement should rarely, if ever,

be employed by the courts against executive agencies.[6] The expungement remedy is burdensome on the executive because it imposes a cost—in terms of both money and lost information that could be useful in the future—and it subverts Congress's otherwise express desire to preserve and maintain all criminal records.[7]

Yet, in the end, the *Janik* court went too far, in our view. Essentially, it held that courts are entirely without power to use the expungement remedy against the executive branch until and unless Congress so permits. *See Janik*, 10 F.3d at 471. This conclusion is troublesome for two reasons.

First, courts—not legislatures—have historically crafted remedies when a claimant has demonstrated that his rights have been violated.[8] The classic case of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803), is a notable example: "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Id.* In the main, courts have not restrained their remedial powers on account of the wrongdoers' affiliation with the executive branch. *See, e.g., Bivens*, 403 U.S. at 395–96, 91 S.Ct. at 2004–05; *Marbury*, 5 U.S. at 163.

More importantly for our purposes, our circuit has employed the expungement remedy before—in the absence of specific congressional permission—when no other remedy existed to vindicate important legal rights. For example, in *United States v. McLeod*,

---

**5.** In *Janik*, a defendant whose firearms conviction had been overturned petitioned the district court for expungement, claiming that the conviction, even though subsequently set aside, interfered with his advancement in the Army Reserve.

**6.** The *Janik* majority properly dismissed the dissent, which stated: "Agency files essentially record events transpiring in the courts, with respect to which courts have a continuing interest. Practical considerations here should be of sufficient weight to override any theoretical separation of powers objections." *Janik*, 10 F.3d at 473 (Cudahy, J., dissenting). As noted above, courts have more latitude over their own records than over others'. A modification of their own

records is akin to a request to modify the judgment. A modification of a prosecutor's records, however, is akin to modifying a private litigant's files.

**7.** *See* 28 U.S.C. § 534.

**8.** "The Court today simply recognizes what has long been implicit in our decisions concerning equitable relief and remedies from statutory schemes; *i.e.*, that a court of law vested with jurisdiction over the subject matter of a suit has the power—and therefore the duty—to make principled choices among traditional remedies." *Bivens*, 403 U.S. at 408 n. 8, 91 S.Ct. at 2011 n. 8 (Harlan, J., concurring in the judgment).

385 F.2d 734, 750 (5th Cir.1967), we ordered expungement in a civil rights/voting rights case because state officials were intentionally arresting blacks to prevent them from voting. No other remedy presented the court with a way to vindicate the wrongly charged individuals' rights.

### 3.

■ The *Janik* court maintained that in the absence of congressional authority, it did not have the right to use the expungement remedy.[9] Because this characterization is overly broad—especially in light of *McLeod*[10]—we adopt a narrower focus: In order to have standing to seek expungement, the party seeking expungement against executive agencies must assert an affirmative rights violation by the executive actors holding the records of the overturned conviction.

### B.

■■ Thus, *McLeod* supports our contention that outside the sphere of the court's own records, the petitioner must assert a specific rights violation—one that cannot be remedied by the relief otherwise provided for by the courts or by Congress—in order to qualify for expungement. In *McLeod*, the wrong was not the independent lack of expungement by the state officials; rather, we used expungement as a remedial measure for the state officers' civil rights violations. *See McLeod*, 385 F.2d at 750. The remedy was a direct and proximate result of those violations. *See also Doe v. Webster*, 606 F.2d 1226, 1231 (D.C.Cir.1979) (requiring a nexus between the injury and the expungement remedy). In this case, by way of contrast, the only possible rights violation to justify federal jurisdiction would appear to be the violation of the defendant's "right to expungement."

### 1.

There is no constitutional basis for a "right to expungement." The President, not the district court, runs the executive branch—and it is he who decides how that branch will function. There is no specific exception to this general constitutional rule for expungement. The Due Process Clause, for example, has never been read that broadly. *Cf., e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002–03, 103 L.Ed.2d 249 (1989). The "inherent equity powers of the court"—with even less textual basis than many due process rights—should require no more.

9. Congress has explicitly provided for expungement of executive branch materials in specific cases. For example, Congress has allowed courts to expunge executive branch records under the Controlled Substances Act, 18 U.S.C. § 3607(c); 21 U.S.C. § 844a(j).

Arguably, under the canon of *expressio unius exclusio alterius*, because Congress has failed to provide general expungement remedies, we should find that it has intended not to do so for cases that these statutes fail to reach. *See, e.g., Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1206 (5th Cir.1997). By this reasoning, Congress's affirmative grant of an expungement remedy for executive branch materials in some circumstances, but not in others, wipes away any federal common law rights—and remedies—that otherwise may have existed. *Cf. id.* (holding that congressional provision of a specific remedial scheme foreclosed other court-made remedies).

Such an interpretation, however, conflicts with our caselaw in the civil rights area. There, we have used the expungement power to remedy civil rights violations in the absence of a statutory grant of expungement powers. *See McLeod*, 385 F.2d at 750. Although we could find that the subsequent enactment of the expungement remedy in the Controlled Substances Act was an implicit repeal of all other uses of the remedy, the argument is weak. Had Congress wanted to foreclose this remedy—that courts have been employing for years on their own—it logically would have passed a general prohibition of its use.

10. *McLeod* was a case ordering state officials to expunge records. Here, the issue concerns Article II actors. We have noted, in *dictum*, one possible distinction between court expungement orders against state officials and those against federal executive actors. *See Scott*, 793 F.2d at 118. Expungement orders against Article II actors could interfere with the pardon power. *See id.* That power, however, should not be read *to prevent* court relief for rights violations. There is no apparent reason why the two powers of the different branches cannot operate contemporaneously—just as judicial review and the pardon power normally do. The pardon-power argument also appears to have no limit. If court-ordered expungement interferes with the pardon power, congressionally approved court expungement—as in the Controlled Substances Act—also should be unconstitutional.

**2.**

Furthermore, there is no statutory right to expungement in this case. Where the courts have elsewhere provided for expungement of executive branch records, it has been to remedy statutory rights. For example, courts have ordered expungement of arrest records under the Controlled Substances Act and the Youth Corrections Act. *See* 18 U.S.C. § 3607(c) (outlining the expungement process under the Controlled Substances Act); *Doe,* 606 F.2d at 1231 (expunging FBI records under the Youth Corrections Act, 18 U.S.C. § 5005).

These court actions came not from a general amorphous right to expunge, but from specific statutory provisions granting a right that could be effected only by the court's use of that remedy: "While the decision to expunge an arrest record depends on the facts and circumstances of the case, there must be a logical relationship between the injury and the requested remedy." *Doe,* 606 F.2d at 1231 (citations omitted). The District of Columbia Circuit has explained *Doe* thusly: "Our holding in [*Doe* ] rested ... on a statute providing for expungement.... In ordering the expungement of appellant's conviction for a marijuana offense committed while a minor, *the court explicitly did so pursuant to ... a federal statute* designed to promote the rehabilitation of juvenile offenders." *Livingston v. United States Dep't of Justice,* 759 F.2d 74, 78 (D.C.Cir.1985) (emphasis added).

The presence of a statute and the need to give full effect to statutory rights are what gave rise to cases like *Doe.* The court's "general power" to order expungement against executive agencies cannot be exercised at will. Instead, it must be tied to an explicit constitutional or statutorily-created right.

---

**11.** Of course, expungement could be a right in itself if Congress so provides—as it has done in the Controlled Substances Act. *See* 18 U.S.C. § 3607(c).

**12.** There also exists no authority to support the district court's authorization of such an

**3.**

We should not elevate a mere remedy to the status of a right.[11] The fashioning of a remedy should be based on something else. A petitioner cannot come into court to ask for an injunction and have the harm the injunction is based on be the fact that the government officers would not enjoin themselves. Something is missing. That something is injury to a legally protected interest. *See Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136.

There is no allegation that any governmental agency is using information adversely to the defendant. He does not claim that the government is denying him benefits that an unconvicted person would be entitled to receive; he claims only that the records "interfere" with his career in law enforcement. Although such showings of burden may justify the court's decision to expunge judicial records—or to amend the judgment—we cannot grant expungement relief against the executive without more specificity.

**IV.**

The defendant also has not met the high standard for invoking the remedy of expungement. This case is indistinguishable from *Rogers,* for granting expungement would give the defendant "more relief than if he had been acquitted." *Rogers,* 469 F.2d at 1085.[12]

**A.**

■ The district court erred in finding this case distinguishable from *Rogers.* There, we held that the petitioner was not entitled to expungement in a case in which his conviction had been overturned because of a Sixth Amendment right-to-counsel violation. *See id.* "Public policy requires here that the retention of records of the arrest and of the subsequent proceedings be left to

---

all-encompassing expungement order. The court ordered an expungement of *all* records of *all executive agencies.* Such an order directly contravenes our holding in *Rogers* that such a remedy, if granted, must be "exceedingly narrow." *Rogers,* 469 F.2d at 1085.

the discretion of the appropriate authorities. The judicial editing of history is likely to produce a greater harm than that sought to be corrected." *Id.*

In *Scott,* we followed the "clear" jurisprudence of *Rogers:* "Since we have determined that a district court lacks power to order the official records of an *overturned* conviction rewritten, it follows as an *a fortiori* matter that the court is not empowered to do so in a case such as this...." *Scott,* 793 F.2d at 118. Other circuits also have narrowly delineated this extreme remedy: "[A]n acquittal, standing alone, is not in itself sufficient to warrant an expunction of an arrest record." *United States v. Linn,* 513 F.2d 925, 927–28 (10th Cir.1975); *accord, e.g., United States v. Schnitzer,* 567 F.2d 536, 539–40 (2d Cir.1977) (quoting *Linn* ).

The overturned conviction in *Rogers* seems indistinguishable from the overturned conviction here. The district court believed, however, that the instant case is distinguishable from our precedent because "[m]ore than being presumed innocent or found innocent of a valid crime, [defendant] was charged with and convicted of crimes which did not exist."

We disagree.[13] If the defendant had been pardoned or acquitted, he would be entitled to be treated as a person who had never been charged.[14] If he were still denied government benefits because he had been charged,

he colorably could assert a civil rights challenge—arguing that his right to be free from double jeopardy, or his constitutional right under the pardon power, had been infringed. An overturned conviction should provide similar, not greater, protections.

### B.

#### 1.

■ Even if, *arguendo,* a defendant whose convictions are overturned somehow has more rights than one who is declared not guilty, the strong presumption is against expungement. *See, e.g., Rogers,* 469 F.2d at 1085. In the overwhelming majority of cases—those cited by the district court and the government[15]—the court has refused to grant the remedy of expungement.[16] Only a handful have ever actually upheld such relief—and then only limited relief in exceptional circumstances.[17]

None of the cases cited supports the proposition that the harm the defendant alleges justifies the extraordinary remedy of expungement. For example, in *United States v. Friesen,* 853 F.2d 816 (10th Cir.1988), the court reversed the expungement order in a situation similar to the one presented here. There, a jury had acquitted Friesen, an attorney, of conspiracy to manufacture and distribute cocaine in violation of federal law. Friesen argued that he " 'is currently being

---

13. The defendant was charged with conspiracy and wire-fraud—crimes that certainly do exist. His convictions were overturned because the jury *could have* made an impermissible inference. For the purposes of this case, the setting aside of this conviction seems indistinguishable from a jury's finding of reasonable doubt.

14. It would not necessarily entitle him to expungement, however. *See Linn,* 513 F.2d at 927.

15. *See United States v. Pinto,* 1 F.3d 1069 (10th Cir.1993); *Geary v. United States,* 901 F.2d 679 (8th Cir.1990); *United States v. Friesen,* 853 F.2d 816 (10th Cir.1988); *Scott,* 793 F.2d at 118; *Allen v. Webster,* 742 F.2d 153 (4th Cir.1984); *International Harvester,* 720 F.2d at 420; *Diamond v. United States,* 649 F.2d 496 (7th Cir. 1981); *Schnitzer,* 567 F.2d at 539–40; *United States v. Briggs,* 514 F.2d 794 (5th Cir.1975);

*Linn,* 513 F.2d at 927; *United States v. Bohr,* 406 F.Supp. 1218 (E.D.Wis.1976).

16. *See Pinto,* 1 F.3d at 1070–71; *Geary,* 901 F.2d at 680; *Friesen,* 853 F.2d at 818; *Scott,* 793 F.2d at 118; *United States v. G.,* 774 F.2d 1392, 1395 (9th Cir.1985); *Allen,* 742 F.2d at 154–55; *International Harvester,* 720 F.2d at 420; *Schnitzer,* 567 F.2d at 539–40; *Carter v. Hardy,* 543 F.2d 555 (5th Cir.1976); *United States v. McMains,* 540 F.2d 387, 389 (8th Cir.1976); *Linn,* 513 F.2d at 927; *Rogers,* 469 F.2d at 1085; *United States v. Seasholtz,* 376 F.Supp. 1288, 1290 (N.D.Okla. 1974).

17. *See Menard v. Mitchell,* 430 F.2d 486, 490–91 (D.C.Cir.1970) (Fourth Amendment violation); *McLeod,* 385 F.2d at 750 (civil rights remedy); *Bohr,* 406 F.Supp. at 1219–20 (motion unopposed by U.S. Attorney); *Kowall v. United States,* 53 F.R.D. 211, 215–16 (W.D.Mich.1971).

grievously injured because by the retention of the ... records ... [he] is being damaged in terms of employment availability, reputation in the community, and possible denial of professional licensing.'" *Id.* at 816. The court found that the district court's order expunging the prosecution's records on this showing alone constituted an abuse of discretion.

We have similarly held that granting expungement of executive branch records on the facts alleged in *Friesen* would constitute an abuse of discretion. In *Rogers,* a defendant whose conviction had been overturned had suffered tangible harm: He had been forced to tender his resignation from the school board as a result of his conviction. In *Scott,* the petitioner complained that the records of her past convictions interfered with her job as a securities dealer. Notwithstanding these showings of harm, we vacated both expungement orders. *See Scott,* 793 F.2d at 118; *Rogers,* 469 F.2d at 1085.

### 2.

■ The defendant asserts that the government has made no showing to justify not expunging. He improperly places the burden on the government. Instead, he must demonstrate that there is likely no other remedy that can relieve his injury.

■ Expungement is "exceedingly narrow" and is granted only in exceptional circumstances. *Rogers,* 469 F.2d at 1085; *accord, e.g., Geary v. United States,* 901 F.2d 679, 680 (8th Cir.1990) (citing cases). The district court's reasoning is based on the fact that the government failed to provide a strong enough justification for not expunging. The government's interests here, however, are presumed, unless the petitioner can overcome them. *See Rogers,* 469 F.2d at 1085 (holding, without discussing the government's interests, that the petitioner had failed to meet his burden).

The defendant has not made an adequate showing of harm. He claims that he is having a hard time getting a job in law enforcement because he was convicted of conspiracy and fraud when he was an official of a sheriff's office. Assuming, without deciding, that such discrimination is unlawful, he has made no showing why he cannot seek a narrower remedy against the unknown and unnamed officers or agencies who are discriminating against him.

### 3.

The government has weighty interests in keeping its records unredacted. Congress has mandated that the Attorney General "acquire, collect, classify, and preserve" all records concerning a crime. 28 U.S.C. § 534(a). Moreover, there is a valid law enforcement need: The information may assist in further investigation of the conspiracy or related crimes.

The government cannot and should not be forced to rewrite history whenever the inclination strikes a defendant whose conviction is subsequently overturned. *See Rogers,* 469 F.2d at 1085. In the absence of any showing of an agency's or official's affirmative misuse of the subject information, the government's interests outweigh the defendant's. Therefore, the decision to order expungement in executive branch records was necessarily an abuse of discretion.

REVERSED.