UNITED STATES of America

v.

Drelton CARSON

No. 304MC19J99TEM.

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 15, 2004.

Frank Merrill Talbot, II, U.S. Attorney's Office, Middle District of Florida, Jacksonville, FL, for United States of America.

Drelton Carson, Columbia, SC, pro se.

## ORDER

CORRIGAN, District Judge.

This case is before the Court on defendant's Motion to Expunge Arrest Record (Doc. 1) to which the government responded in opposition (Docs. 2, 3). The undersigned referred the matter to the assigned United States Magistrate Judge who conducted a hearing and prepared a Report and Recommendation recommending that the motion be denied. *See* Doc. 9. No objections were filed and the time in which to do so has now passed.

Accordingly, upon independent review of the file and for the reasons stated in the Report and Recommendation issued by the Magistrate Judge (Doc. 9), it is hereby

**ORDERED:**

1. The Report and Recommendation (Doc. 9) of the Magistrate Judge is **ADOPTED** in full as the opinion of the Court.

2. Defendant's Motion to Expunge Arrest Record (Doc. 1) is **DENIED**.

3. The Clerk is directed to **close** the file.

## REPORT AND RECOMMENDATION [1]

MORRIS, United States Magistrate Judge.

The Court has before it a Motion to Expunge Arrest Record (Doc. #1, Mo-

---

1. Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district

tion), to which the United States has responded in opposition (Docs.# 2, # 3). The matter was referred to this Court (Doc. # 5) for consideration and issuance of a Report and Recommendation. Carson did not provide any details in his motion, nor did he include a memorandum of law in support of the relief requested. A hearing on the Motion was held on June 29, 2004.[2] The United States appeared in person at the motion hearing, while Carson was permitted to appear telephonically because he resides out of state.

*Facts:*

Drelton Carson was arrested on September 23, 2003, at the United States Courthouse in Jacksonville, FL. A complaint was filed charging that Carson "knowingly possessed or caused to be present a firearm in a Federal court facility" in violation of Title 18 U.S.C. § 930(e)(1). The affidavit accompanying the complaint stated that Court Security Officers recovered a .38 caliber Smith & Wesson firearm from Carson's briefcase as Carson attempted to pass through the security checkpoint at the courthouse main entrance.

On motion of the United States, the complaint (in *United States v. Drelton Carson*, Crim. Case No. 3:03–m–0273–MMH) was dismissed on October 10, 2003. *See* Docs. # 6, # 9 in Case No. 3:03–m–0273–MMH.

At the hearing on the instant motion, the assistant United States attorney stated that after the firearm was discovered, Carson indicated he had forgotten it was in that briefcase. At the time of the incident,

Carson was a law student and clerking for a lawyer from South Carolina and they had driven to Jacksonville for a court proceeding. Carson had a South Carolina permit to carry a firearm. Carson stated[3] that he obtained the permit to carry the firearm because his family operates a small business and occasionally has a large amount of cash on hand to meet a payroll. Carson stated he thought that the firearm was in a black travel bag in the trunk of the car, rather than in the black briefcase where it was found.

The United States investigated Carson's background, received information from acquaintances, and found no reason to dispute Carson's claim that he had forgotten the firearm was in the briefcase.

Carson filed his Motion to Expunge Arrest Record on March 29, 2004, in the original criminal case which had been closed. The Court ordered the matter referred to a new miscellaneous file based on the affirmative relief sought (Doc. # 4).

At the June 29, 2004 hearing, Carson stated that because he is a second-year law student at a law school in New York state, he is concerned the arrest could cause him difficulties with bar admission and other career goals.[4] Carson mentioned an incident in which he recently had trouble getting into a federal prison for an interview with his employer's client because of the firearms possession charge. The prosecutor responded to Carson's stated concern by noting he had checked with the Federal Bureau of Investigation records center and found that the Marshal's office had not

judge and from attacking the factual findings on appeal.

2. The transcript of the motion hearing is docketed in the record at Doc. # 8.

3. Carson was not placed under oath prior to addressing the Court.

4. It was mentioned to Carson that expungement of a record might not allow him to answer negatively to a question as to whether he has ever been arrested. The organization whose form is being completed should provide its interpretation of any such question.

entered the dismissal of the charge in the record before Carson's prison visit, but that situation had been corrected prior to the motion hearing.

*Analysis:*

As noted earlier, Carson did not file a memorandum of law to support his request for expungement. His motion requested an order "expunging his arrest record from the National Crime Investigation Center (NCIC)[5] record database and any and all relevant law enforcement agencies." Doc. #1. He did not specifically mention the court file itself when making his request to expunge the records related to the September 23, 2003 arrest.

■ There is no specific constitutional or general statutory right to expungement. *Sealed Appellant v. Sealed Appellee,* 130 F.3d 695, 699–700 (5th Cir.1997), *cert. denied* 523 U.S. 1077, 118 S.Ct. 1523, 140 L.Ed.2d 675 (1998).[6] There is, however, substantial case law, generally not favorable to Carson.

In examining the case law, it is apparent that the circuit courts allow expungement of records, if at all, only in cases involving exceptional circumstances. Some circuits have found that courts have inherent equitable power to consider expungement. *See, e.g., Geary v. United States,* 901 F.2d 679, 680 (8th Cir.1990). Other circuits have found that courts have ancillary jurisdiction related to the underlying criminal matter to consider a request for expungement. *See, e.g., United States v. Schnitzer,* 567 F.2d 536 (2d Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978).

The Ninth Circuit has held that district courts possess ancillary jurisdiction; however, it rejected an argument that the court may use that power for equitable considerations, finding that the ancillary jurisdiction would be limited to expunging the record of an unlawful arrest or conviction, or to correct a clerical error. *United States v. Sumner,* 226 F.3d 1005, 1014 (9th Cir.2000)(although the case concerned a Youth Corrections Act ("YCA") sentence imposed 26 years previously, the court also considered whether it had general equitable power to expunge after rejecting the YCA claim).

The Seventh Circuit has held that courts have no jurisdiction to order expungement of executive branch records[7] of an indictment and conviction, even after the conviction was overturned on appeal for violation of the Speedy Trial Act and the case was subsequently dismissed with prejudice. *United States v. Janik,* 10 F.3d 470, 472 (7th Cir.1993). The court distinguished

---

**5.** The correct term is National Crime Information Center. *See* Title 28, U.S.C. § 534(e)(3)(A).

**6.** Currently, the only non-juvenile statutory expungement provisions of which the Court is aware are in Title 18 U.S.C. § 3607 (dealing with certain criminal drug offenses under Title 21 U.S.C. § 844(a)) and in Title 21 U.S.C. § 844a(j)(dealing with civil drug penalties). During the period of 1950 through 1984, a Federal Youth Corrections Act ("YCA") existed at Title 18 U.S.C. §§ 5005–5026 allowing procedures for a "set aside" of conviction of certain individuals under age 26. A review of the history of the momentum for that act is contained in *Doe v. Webster,* 606 F.2d 1226,

1233–1238 (D.C.Cir.1979). The act was repealed with the enactment of the Sentencing Reform Act of 1984, Pub.L. 98–473, Title II, Section 218(a)(8), although courts have continued to consider requests of persons previously sentenced under the YCA. *See, e.g., United States v. Doe,* 747 F.2d 1358 (11th Cir. 1984); *United States v. Sumner,* 226 F.3d 1005 (9th Cir.2000); *United States v. Fosher,* 124 F.3d 52 (1st Cir.1997); *United States v. Noonan,* 906 F.2d 952 (3d Cir.1990).

**7.** Such as NCIC, Federal Bureau of Investigation, Department or Justice or United States Marshal's Service.

the request for executive branch records from judicial or court records, and applied a balancing test as to the expunction of judicial records: "if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate." *Id.* at 472, *Diamond v. United States,* 649 F.2d 496, 499 (7th Cir.1981). Applying that test to the defendant, the court found the defendant's fear of hiring and promotion rejections because of the indictment 'was not sufficient to outweigh the public interest in maintaining the records. *Janik,* 10 F.3d at 472–73.

The Court has not found any Eleventh Circuit published opinions on expungement in general (a YCA case is discussed, *infra);* however, the Fifth Circuit prior to its 1981 split held that "the Court's privilege to expunge matters of public record is one of exceedingly narrow scope." *Rogers v. Slaughter,* 469 F.2d 1084, 1085 (5th Cir. 1972).[8] In that case, a Duval County school employee who accidentally fired a weapon he had carried to a school was convicted in state court of discharge of a firearm. The federal district court reversed the conviction on a right-to-counsel issue and ordered all public records expunged. The Fifth Circuit reversed the part of the decision concerning expungement, stating: "The judicial editing of history is likely to produce a greater harm than that sought to be corrected." *Id.* at 1085. Previously, the Fifth Circuit had ordered expungement in a civil rights/voting rights case in which state officials had intentionally arrested blacks to prevent them from voting. *United States v. McLeod,* 385 F.2d 734, 750 (5th Cir.1967). Thus the expungement was used as a re-

medial measure for the state officials' misconduct.

The Fifth Circuit has continued to follow *Rogers* and *McLeod.* In *Sealed Appellant,* 130 F.3d at 699, the court held that in order to have standing a party seeking expungement against executive agencies "must assert an affirmative rights violation by the executive actors holding the records of the overturned conviction." Otherwise, "The President, not the district court, runs the executive branch -and it is he who decides how that branch will function." *Id.* The court found no constitutional basis for a right to expungement, thus unless there is a specific rights violation (or a specifically delineated statutory right), the executive branch is left to decide how to handle its own records.

Even in the circuits that have found ancillary jurisdiction or inherent equitable power to order expungement, relief usually is granted only in "extreme circumstances." *Schnitzer, supra,* 567 F.2d at 539–540. The court in *Schnitzer* noted that in determining whether those circumstances exist, other courts have balanced the "equities between the right of privacy of the individual and the right of law enforcement officials to perform their necessary duties." *Id.* The *Schnitzer* court further found retaining and preserving arrest records serves an important law enforcement function.[9] Even though arrest records can have a deleterious effect on citizens, the power to expunge should be used narrowly, not for each case ending in acquittal, but should be "reserved for the unusual or extreme case." *Id.,quoting United States v. Linn,* 513 F.2d 925, 927 (10th Cir.), *cert. denied,* 423 U.S. 836, 96

---

**8.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth

Circuit handed down prior to the close of business on September 30, 1981.

**9.** *See* Title 28 U.S.C. § 534(a).

S.Ct. 63, 46 L.Ed.2d 55 (1975). In *Schnitzer*, the court held the fact that the defendant was a rabbinical student who might have to explain the arrest and indictment in his career did not constitute an extreme case. Even though the indictment charging a false claim was dismissed because the prosecutor did not believe he could establish guilt beyond a reasonable doubt, the indictment itself constituted a finding of probable cause. *Schnitzer, supra,* 567 F.2d at 540.[10]

The Eighth Circuit has held that a federal court has inherent equitable power to order expungement in an extraordinary case, but a defendant acquitted of a bank robbery charge had no right to an evidentiary hearing where he alleged only that the arrest records would cause embarrassment and interfere with his ability to earn a livelihood, but provided no supporting facts. *Geary, supra,* 901 F.2d at 679–80. The court held those claims without facts cited in support failed to allege extraordinary circumstances. *Id.* at 680.

In the Tenth Circuit, the court has held the trial court discretion to order expungement should not be used frequently. *United States v. Friesen,* 853 F.2d 816 (10th Cir.1988). The district court found that an attorney acquitted of controlled substance charges would be "grievously injured" in his professional career and ordered the records expunged. The appellate court reversed and remanded for an evidentiary hearing to see if the attorney could prove such injury and whether it would be so compelling to cause the court to use the "narrow" power of expungement. *Friesen,* 853 F.2d at 818.

The District of Columbia has found that the general power of federal courts to protect important legal rights includes the power to order expungement. *Doe v. Webster,* 606 F.2d 1226, 1230 n. 8 (D.C.Cir. 1979). The court, however, declined to use that power as to the arrest record of a youth who had been arrested for a marijuana offense who subsequently had graduated from college and law school and feared difficulties in seeking employment. The *Webster* court found that generally arrest records should be expunged only "when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of arrest." *Id.* at 1231. The court did, however, order the records of the conviction in the case, which had been set aside under the YCA, to be physically removed from central files and kept sealed separately, only to be used for law enforcement investigations. *Id.* at 1244.

The Third Circuit has held that a YCA defendant is entitled to complete expungement, although it adopted *Doe's* language as to physical segregation of the records. *U.S. v. Doe,* 980 F.2d 876 (3d Cir.1992). *See also United States v. Doe,* 935 F.Supp. 478, 481 (S.D.N.Y.1996). The Eleventh Circuit, along with the First and Eighth Circuits, has found the legislative history of the YCA in creating the "set aside" provision did not mean to conceal such records from prospective employers and does not require expungement or sealing of conviction records. *U.S. v. Doe,* 747 F.2d 1358, 1359–60 (11th Cir.1984); *U.S. v. Doe,* 732 F.2d 229 (1st Cir.1984); *U.S. v. McMains,* 540 F.2d 387, 389 (8th Cir.1976).

---

**10.** *See also, Allen v. Webster,* 742 F.2d 153 (4th Cir.1984) (agreeing with *Schnitzer* and affirming denial of expungement to defendant acquitted of a crime who feared the record would cause difficulty obtaining federal employment); *United States v. Doe,* 556 F.2d 391 (6th Cir.1977) (finding inherent equitable powers should not be used to expunge a record already set aside under the YCA).

▮ In the instant case, Carson has not cited a rights violation, nor is any apparent on the record. There is no argument that he did not carry the firearm into the courthouse. Carson claims that it was not done knowingly. The applicable statute has a scienter requirement. *See Staples v. United States,* 511 U.S. 600, 610, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), *United States v. McArthur,* 108 F.3d 1350, 1354 n. 8 (11th Cir.1997). A complaint must contain the source of the incriminating information and must detail information that, if true, would directly indicate the defendant committed the crime charged. *Jaben v. United States,* 381 U.S. 214, 223, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). It must answer the magistrate judge's hypothetical question: "What makes you think that the defendant committed the offense charged?" *Id.* at 224, 85 S.Ct. 1365. The intent is to allow the judge to determine if further criminal process is justified. *Id.* Here, a warrant was unnecessary because Carson had been taken into custody, however, the magistrate judge's signing of the sworn complaint constitutes an initial finding of probable cause. Fed.R.Crim.P. 3, 5(b). The complaint contained information as to the finding of the firearm in Carson's bag, who found it, and the fact that a warning sign in compliance with Title 18 U.S.C. § 930(h) was properly posted at the entrance to the courthouse screening area.

The prosecutor indicated that the factors the United States considered in dismissing the complaint were Carson's background and references, his claim of mistake, and whether there was a reasonable probability of proving the case to a jury on a reasonable doubt standard. The Court does not find any government misbehavior in the matter. It appears that any harm that occurs to Carson because of the existence of the arrest record is attributable to him rather than to any actions of law enforcement personnel.

Moreover, although the Court would hope Carson has learned from the episode, should he be stopped again at a courthouse or airport, the Court cannot say that a prosecutor considering the matter should be deprived of access to the information about the incident underlying the instant motion.[11] *See, e.g., U.S. v. Lunstedt,* 997 F.2d 665 (9th Cir.1993) (defendant received an 10–month jail sentence for conviction of possession of a firearm in a federal courthouse where prior to the firearm being discovered through x-ray of a bag, a small pocket knife had been found on his person and he had been told by the security officer he could not carry the knife in the courthouse. No other aggravating facts were described in the opinion). The very presence of an unauthorized firearm in a courthouse threatens everyone in the building and their families, irrespective of whether the offending party is cognizant of having carried the gun into a restricted area.

Federal law specifically provides for the Attorney General to obtain and maintain criminal identification records as well as records which would assist in identification of deceased individuals, identification of missing persons and exchanging information with local, state or federal officials. Title 28, U.S.C. § 534(a)(1–4). This would include fingerprints kept at the National Crime Information Center. Title 28, U.S.C. § 534(e)(2), (3)(A).

The Court recognizes there have been a few district court cases in which expungement was granted. For example, in *United States v. Johnson,* 714 F.Supp. 522

11. In the complaint for Carson's arrest, paragraph 3 indicates that shortly after the firearm was found, the officers checked NCIC to see if Carson had a prior record.

(S.D.Fla.1989), the court directed expungement for a defendant who had received a directed verdict of acquittal on a charge of assault on a federal officer where the defendant was about to leave the country for employment that might be scuttled by a background check. The *Johnson* court acknowledged there was probable cause for a state charge of assault, but found expungement of the federal "criminal records" was necessary to preserve the defendant's basic legal rights. There was no discussion of the extent of the defendant's criminal records, including whether those records were executive as well as judicial. *See, however, United States v. Lopez,* 704 F.Supp. 1055 (S.D.Fla.1988) (another judge from the Southern District, relying on the Fifth Circuit cases, declined to order expungement of records of a charge the Assistant United States Attorney had dismissed, even though the records might impact the career of the private investigator defendant).

Expungement also was granted in *United States v. Van Wagner,* 746 F.Supp. 619 (E.D.Va.1990) (government conceded indicted defendant was actually innocent after dismissing charges, defendant proved he was suffering economic hardship because of the record); *Natwig v. Webster,* 562 F.Supp. 225 (D.R.I.1983) (plaintiff had been arrested, but a grand jury declined to indict him 15 years previously, and his record might jeopardize his planned emigration to Australia); and, *United States v. Bohr,* 406 F.Supp. 1218 (E.D.Wis.1976) (indictment was dismissed 11 years earlier against and defendant attorney was seeking to join another state's bar; United States did not oppose the motion or assert law enforcement need to keep records).

After review of all of the cases, the Court believes it is required to follow the precedent of *Rogers, supra,* 469 F.2d 1084, and deny expungement where there has been no official misconduct. The Eleventh Circuit case of *Doe, supra,* 747 F.2d 1358, is not directly on point, but gives no indication that the Court would adopt a more lenient standard. The Fifth Circuit has recently continued to give the *Rogers* and *McLeod* cases vitality in *Sealed Appellant, supra,* 130 F.3d at 699–700. Under this analysis, Carson has suffered no rights violation from any governmental misconduct, and would not be entitled to expungement of his record with executive agencies.

■ Even under the exceptional circumstances analysis applied in some other circuits, Carson would not be entitled to expungement. There is no assertion of a lack of probable cause for the arrest. Although the need for law enforcement maintenance of the records is primarily based on the statutory provisions, the claim of forgetfulness could be relevant in any future incident should the conduct repeat. It is considered a serious offense. His assertion of hardship or need for expunction is somewhat speculative, at least at this point, and the Court cannot find that it outweighs the law enforcement considerations. Several of the cases cited, *supra,* in which expungement has been denied have concerned students or lawyers.

### Recommendation:

Carson's motion requests an order "expunging his arrest record" for the complaint case, which could be construed as a request to expunge the judicial records. However, in the next paragraph Carson states the request is for the "National Crime [Information] Center (NCIC) record database and any and all relevant law enforcement agencies." Thus, the instant motion should be construed as seeking expungement of all records related to the subject arrest on September 23, 2003.

For the reasons stated above and on the facts of this case as presented, the Court does not believe it has jurisdiction to order executive agencies to expunge their records. Further, even if jurisdiction existed, Carson has not shown the exceptional circumstances that would be needed for such an order.

As to the judicial records, the Court also does not believe Carson has met his burden of showing a need for expungement. Indeed, it may be beneficial to Carson to leave the record open so any prospective state bar or employer may easily verify that the case was dismissed. A sealed record might provoke more questions as to the reasons.

Based on the foregoing findings, the Court recommends the Motion to Expunge Arrest Record (Doc. # 1) be **DENIED.** August 4, 2004.