# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2024

Lyle W. Cayce
Clerk

No. 24-60189

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ROBERT CORKERN,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:11-CR-38-3

_____

Before SMITH, STEWART, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Defendant–Appellant Robert Corkern moved to expunge, seal, or destroy all records of his indictment and arrest, including any record of his conviction. The district court denied Corkern's motion, concluding that it lacked jurisdiction to order expungement of his records. For the reasons stated below, we AFFIRM the district court's denial.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-60189

## I.  FACTS AND PROCEDURAL HISTORY

Robert Corkern was indicted in September 2011 for one count of conspiracy to make a false statement to the United States Department of Agriculture in violation of 18 U.S.C. § 1014, three counts of aiding and abetting the making of a false statement to the United States Department of Agriculture in violation of 18 U.S.C. § 1014, and one count of federal program bribery in violation of 18 U.S.C. § 666. Pursuant to a plea agreement, Corkern pleaded guilty only to the one count of federal program bribery the following January. Under that agreement, he admitted that—as president, secretary and treasurer of a company handling business operations for a Mississippi hospital—he paid $25,000 to the county administrator as a bribe for the administrator's role in securing a $400,000 county payment to the hospital. Corkern was then sentenced to a term of supervised release for three years, including 24 months of home detention.

In January 2021, then–President Donald J. Trump pardoned Corkern. Following the pardon, Corkern filed a Motion to Expunge Records. He argued that an expungement would assist his medical practice by potentially allowing him to bill patients through Molina Healthcare ("Molina"), Mississippi's largest Medicaid provider.[1]

The district court denied Corkern's Motion to Expunge Records due to lack of jurisdiction. It reasoned that Corkern "fail[ed] to identify a statutory basis for expungement and fail[ed] to allege an affirmative rights violation by the actors holding the records." The court then noted "that a presidential pardon does not in any way reverse the legal conclusion of the

---

[1] Corkern is currently able to bill patients through private insurance and Medicare. He originally stated incorrectly that he sought approval to bill patients through Medicare but corrected that error at the oral hearing for his motion.

courts; it does not blot out guilt or expunge a judgment of conviction." To that point, the court observed that "[t]he power to pardon is an executive prerogative of mercy, not of judicial record-keeping." Finally, the court added that Corkern impermissibly requested "more relief than if he had been acquitted at trial" because "[a]n expungement of the records in this case would eliminate all history of the charges and conviction, but if there had been an acquittal, there still would exist a record of the charges and proceedings." Corkern timely appealed the district court's order.

## II.   Standard of Review

We review de novo a district court's determination regarding its jurisdiction to expunge criminal records. *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 697 (5th Cir. 1997).

## III.   Discussion

For the reasons we now discuss, we agree with the district court's conclusion that it lacked jurisdiction to expunge Corkern's criminal records. *See id.* Accordingly, we pretermit discussion of whether it would have been an abuse of discretion for the district court to deny Corkern's Motion to Expunge Records if it had jurisdiction. *See Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998)) ("[A] court cannot assume that it has jurisdiction and proceed to resolve a case on the merits.").

### A.

We have recognized only two contexts in which federal courts have jurisdiction to order a defendant's records expunged: (1) where the defendant has a specific statutory right to expungement, and (2) where the record retention constitutes an affirmative violation of his constitutional

rights. *Sealed Appellant*, 130 F.3d at 699–700.[2] To show an affirmative violation, a defendant "must assert a specific rights violation . . . by the executive actors holding the records of the *overturned* conviction." *Id.* at 699 (emphasis added). Even then, however, a court nonetheless lacks power to order expungement "as an *a fortiori* matter" if "the validity of the original conviction is unquestioned" such that it has not been overturned. *United States v. Scott*, 793 F.2d 117, 118 (5th Cir. 1986); *Sealed Appellant*, 130 F.3d at 701 (quoting the same).

Significantly, "the granting of a pardon is in no sense an overturning of a judgment of conviction." *Nixon v. United States*, 506 U.S. 224, 232 (1993).[3] It is instead "[a]n executive action that mitigates or sets aside punishment for a crime." *Id.* (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)); *see also Noonan*, 906 F.2d at 959–60 (determining that "the effect

---

[2] Other circuits instead consider whether a defendant's motion to expunge falls within their ancillary jurisdiction—now referred to as supplemental jurisdiction. *See, e.g.*, *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007); *Doe v. United States*, 833 F.3d 192, 199 (2d Cir. 2016); *United States v. Dunegan*, 251 F.3d 477, 479 (3d Cir. 2001); *United States v. Field*, 756 F.3d 911, 916 (6th Cir. 2014); *United States v. Wahi*, 850 F.3d 296, 302–03 (7th Cir. 2017); *United States v. Meyer*, 439 F.3d 855, 859–60 (8th Cir. 2006); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000). This circuit, however, has not adopted that approach. *See United States v. Jones*, 2022 WL 1078025, at *3 (M.D. La. Apr. 11, 2022) (unpublished) (citing *Sealed Appellant*, 130 F.3d at 699). Even if we did, it would lead us to the same result. Supplemental, or ancillary, jurisdiction "does not stretch so far as to permit the assertion of jurisdiction over a petition to expunge the judicial record in a criminal case on purely equitable grounds." *Wahi*, 850 F.3d at 302–03. Because a motion to expunge is "not incidental to anything properly before the court" or "to the court's ability to function successfully," jurisdiction over the motion "must instead have a source in the Constitution or statutes." *Id.* Those are the same categories we consider under our current approach. *See Sealed Appellant*, 130 F.3d at 698.

[3] At the district court's oral hearing considering Corkern's Motion to Expunge Records, the parties were under a misunderstanding that a pardon has the effect of wiping out a conviction. The court, however, corrected this misunderstanding in its written order denying expungement.

of a pardon in England prior to the founding of our nation" confirmed that a pardon "does not eliminate" a conviction and "does not create any factual fiction that a conviction had not occurred to justify expunction" (cleaned up)).[4]

## B.

Corkern concedes that he does not have a specific statutory right to expungement, and instead contends that he faces an affirmative violation of "basic legal rights." He puts forward two arguments to this effect. First, he argues that keeping records of his conviction violates the rights of his potential new patients. Specifically, he states that that "[m]any individuals in the Mississippi Delta Region have Medicaid and only an expungement would allow Corkern to be able to receive approval from Medicaid to see covered patients." For that reason, he concludes that not expunging his record "would be denying those individuals [*sic*] rights to his medical care." Second, he argues that his own rights are violated. To that point, he contends that he "is still being punished as a result of his conviction, despite the presidential pardon, which the purpose of was to remove all punishments

---

[4] To be sure, in *Scott*, we said that the President's pardon power gave us "grave doubts whether the grant of judicial power in Article III of the Constitution" permits a district court to order expungement of an otherwise valid conviction in the absence of a pardon. 793 F.2d at 118. We went on, however, to state expressly that we "le[ft] for another day the separation of powers issue." *Id.* That day came when we decided *Sealed Appellant*, where we addressed *Scott*'s "dictum." 130 F.3d at 699 n.10. Although we acknowledged that "[e]xpungement orders against Article II actors could interfere with the pardon power," we held that "the pardon power . . . should not be read to *prevent* court relief for rights violations." *Id.* (emphasis in original). We reached that conclusion because "[t]here is no apparent reason why the two powers of the different branches cannot operate contemporaneously—just as judicial review and the pardon power normally do." *Id.* Here, that reasoning rings even truer because the court faces the issue of whether the President's *grant* of a pardon *requires* expungement. *See id.* Again, a pardon "is in no sense an overturning of a judgment of conviction." *See Nixon*, 506 U.S. at 232. For that reason, it does not require a court to remove records of the conviction. *See id.*

related to the conviction." According to Corkern, that is because his Medicaid application "has been repeatedly denied simply because he must report that he has a criminal conviction, not because of the conduct itself." Pointing to the Seventh Circuit's decision in *Bjerkan v. United States* for support, he claims that "if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications." 529 F.2d 125, 128 n.2 (7th Cir. 1975).

In response to Corkern, the government contends that the district court was correct to deny Corkern's Motion to Expunge Records for lack of jurisdiction. It states that "there is no specific statutory authority granting jurisdiction for the Court to expunge the records of Corkern's conviction and Corkern cannot establish an affirmative violation of his constitutional rights." Concerning specific statutory authority, the government distinguishes this case from those concerning statutes like 18 U.S.C. § 3607(c), which permit courts to expunge convictions for simple possession of a controlled substance (in violation of 21 U.S.C. § 844) if the defendant was under the age of 21 at the time of conviction and successfully completed pre-judgment probation.[5] With respect to an affirmative violation, the government points out that the "repercussions of an otherwise valid conviction do not rise to the level of an affirmative violation of rights." *Melawer*, 341 F. App'x 83, 84 (5th Cir. 2009) (unpublished). Because Corkern's pardon was "in no sense an overturning of a judgment of conviction," *Nixon*, 506 U.S. at 232, he does not raise any direct violations

---

[5] Again, Corkern does not contend that the court has specific statutory authority to grant his Motion to Expunge Records.

of his constitutional rights but only ancillary after-effects of a valid conviction.

The government further contends that—even if Corkern did call into question his conviction's validity—he still cannot establish an affirmative violation of his rights because he does not clearly define what constitutional legal rights are at issue. Instead, he merely states that his "basic legal rights" are at stake. The government states that Corkern appears to refer to "his inability to fully regain his ability to practice medicine without restriction." Courts, according to the government, "have not interpreted the meaning of 'affirmative rights violation' so broadly, as to include a physician's inability to bill Medicaid or practice medicine . . . without restriction." Accordingly, the government concludes that Corkern has failed to establish a sufficient violation of his rights such that the district court had jurisdiction to order his records expunged.

## C.

We agree with the government. The district court correctly concluded that it lacked jurisdiction over Corkern's Motion to Expunge Records. As discussed, "a pardon is in no sense an overturning of a judgment of conviction." *Nixon*, 506 U.S. at 232. Nor does it create a "factual fiction" that a conviction did not occur. *See Noonan*, 906 F.2d at 957 (concluding that a pardon does not justify expungement). Our holding in *Scott* that courts lack jurisdiction to order expungement if "the validity of the original conviction is unquestioned" means that the district court did not have jurisdiction to expunge Corkern's records. *See* 793 F.2d at 118.

Even if a pardon did have the effect of invalidating the underlying conviction, the district court still would have lacked jurisdiction. As discussed, neither party contends that Corkern is eligible for expungement under a specific statutory grant of authority. That means he must point to an

affirmative violation of his constitutional rights by the government as keeper of his records. *See Sealed Appellant*, 130 F.3d at 699. Corkern attempts to do so by discussing his potential Medicaid patients' right to healthcare and—due to his pardon—his own right to practice medicine without restriction on his ability to bill Medicaid. For the patients' rights, even assuming for the sake of argument that an affirmative violation of third-party patients' constitutional rights can serve as a basis for Corkern to seek expungement of his own criminal records,[6] Corkern fails to provide any caselaw establishing that there is a constitutional right to Medicaid assistance for healthcare from a specific doctor.

Moving to Corkern's assertion of his own rights, his pardon does not give him constitutional entitlement to have his conviction overturned. Rather, it merely insulates him from future punishment for that conviction. *See Nixon*, 506 U.S. at 232; *Noonan*, 906 F.2d at 957. Accordingly, Corkern is mistaken that expungement would allow him to truthfully answer no when

---

[6] To be sure, we left this possibility open in *Sealed Appellant*. *See* 130 F.3d at 699. There, we held that "the party seeking expungement against executive agencies must assert an affirmative rights violation." *Id.* We did not specify that the violation must be of the defendant's rights, notwithstanding that we also reasoned that "the violation of *the defendant's* 'right to expungement'" would be insufficient to exercise jurisdiction because there is no such constitutional right. *See id.* (emphasis added). Nonetheless, Corkern would still need to show third-party standing to seek expungement on this ground. *See June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 317–20 (2020), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *Harris v. McRae*, 448 U.S. 297, 318 n.21 (1980).

asked in his application to bill Medicaid if he had any felony criminal convictions.[7]

In sum, the district court correctly concluded that it did not have jurisdiction to grant Corkern's Motion to Expunge Records. *See Sealed Appellant*, 130 F.3d at 700.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Corkern's Motion to Expunge Records.

---

[7] Corkern's citation to the Seventh Circuit's *Bjerkan* decision in response is misplaced. Although in that case the court stated in a footnote that "if the mere conviction involves certain disqualifications . . . the pardon removes such disqualifications," it specifically limited its holding to actions that "constitute a 'punishment.'" *Bjerkan*, 529 F.2d at 128 & n.2. It defined "punishment" as "deprivation of a person's basic civil rights, including the right to vote, the right to serve on juries and the right to work in certain professions." *Id.* at 128.

Here, by contrast, Corkern's record of conviction does not restrict his "right to work" as a doctor. *See id.* He retains his license to practice medicine, and to bill private health insurances and Medicare. He only mentions one limitation on his ability to bill the largest Medicaid managed care product in Mississippi. For these reasons, the government has not affirmatively violated his constitutional rights by retaining his records of conviction.